T.C. Memo. 2009-71

UNITED STATES TAX COURT

MARY ANN AND THOMAS O'MEARA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7829-07L.                    Filed March 30, 2009.

<u>Neal J. Shapiro</u> and <u>Saul A. Bernick</u>, for petitioners.

<u>Trent D. Usitalo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  The issue for decision is whether petitioner
Mary Ann O'Meara is entitled to relief under section 6015(f) from
unpaid joint Federal income taxes, as follows:[1]

---

[1] The record does not reflect the status of petitioners'
Federal income taxes for 1994, 1996, 1997, and 1998.

| Year | Amount |
|------|--------|
| 1991 | $26,819 |
| 1992 | 88,223 |
| 1993 | 37,899 |
| 1995 | 36,232 |
| 1999 | 22,571 |
| 2000 | 21,870 |
| 2001 | 1,138 |
| Total | $234,752 |

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure. Hereinafter, references to petitioner are to petitioner Mary Ann O'Meara, and references to Thomas are to petitioner Thomas O'Meara.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Minnesota.

Petitioners have a long history of filing their joint Federal income tax returns late and of not paying their Federal income taxes.

Petitioners have been married since 1953 and have five children. During their marriage, petitioner was the homemaker, and Thomas provided financial support for the family.

Petitioners maintained several joint bank accounts to each of which petitioner had full access. Together petitioners

regularly discussed family finances and expenses, including the home mortgage, household utilities, automobiles, insurance, and groceries.  Bills relating to the family expenses were received by petitioners at their home.  Petitioner usually opened the mail and wrote the checks for monthly family expenses.

In 1955 Thomas founded Abbott Metals Co. (AMC) as a sole proprietorship to buy, sell, and fabricate metal products.  From 1955 until approximately 2004 Thomas owned and managed AMC, and the income from AMC constituted petitioners' family's primary source of income.

Although occasionally petitioner wrote checks on AMC's bank account to pay bills for AMC, generally petitioner was not involved with AMC.  Petitioner was not employed by and did not receive compensation from AMC.

Petitioners also were involved in other business and investment activities which generated income, including ownership and management of rental real estate.

From 1991 through at least 2001, petitioners had financial problems and often did not have sufficient funds to pay family expenses.  Generally, petitioners together decided which family expenses to pay and when to pay them.

On February 19, 1997, petitioners commenced a proceeding with this Court at docket No. 3118-97 in connection with petitioner's request for relief under section 6013(e) relating to

petitioners' unpaid joint Federal income tax liabilities for 1988 and 1989.  On March 23, 1998, the parties agreed that petitioner was entitled to such relief under section 6013(e), and on April 2, 1998, a decision was entered in docket No. 3118-97 reflecting that agreement.

For some of the years in issue Thomas prepared petitioners' joint Federal income tax returns.  In other years Thomas hired a professional tax preparer to do so.  Generally, Thomas told petitioner when and where to sign petitioners' tax returns, and petitioner signed the tax returns without reviewing the information reported thereon and without inquiring of Thomas whether a tax liability was due and was paid.  Attached to each year's late-filed tax return was a Schedule C, Profit or Loss From Business, relating to AMC.

However, on their 1992 joint Federal income tax return, which was filed late on May 7, 1998, in order that petitioner might build up her Social Security credits petitioners decided to and did report $2,000 of AMC's total net profits of $311,740 as petitioner's (not as Thomas's) income.

On their 1991, 1993, and 1995 joint Federal income tax returns, which were also filed late on May 7, 1998, petitioners reported AMC's total net profits as Thomas's income.

However, on their late-filed Federal income tax returns for 1999, 2000, 2001, again in order that petitioner might build up

her Social Security credits, petitioners reported all of AMC's net profits as petitioner's (not as Thomas's) income.

Also attached to petitioners' joint Federal income tax return for each year in issue was a Schedule D, Capital Gains and Losses, relating to petitioners' investment activities. On those schedules petitioners reported the income relating thereto as Thomas's income.

Also attached to petitioners' joint Federal income tax return for each year in issue was a Schedule E, Supplemental Income and Loss, relating to petitioners' rental real estate. On those schedules petitioners reported some of the rental real estate income as both petitioner's and Thomas's and some of it as just Thomas's.

Reflected in the table below for each year in issue are the dates on which petitioners filed their joint Federal income tax returns late, the Schedule C AMC income that was reported as petitioner's (P) and as Thomas's, the Schedules D and E income (Other income) that was reported as both petitioner's and Thomas's (Both Ps), the other income reported as just Thomas's, and the total taxes reported due and the taxes that have been paid to date:

| Ps' Tax Returns | | AMC Income Reported As Income of | | Other Income Reported As Income of | | Taxes | |
| Year | Filing Date | P | Thomas | Both Ps | Thomas | Due | Paid |
|---|---|---|---|---|---|---|---|
| 1991 | 05/07/1998 | -0- | $128,336 | -0- | $130 | $26,819 | -0- |
| 1992 | 05/07/1998 | $2,000 | 309,740 | $1,004 | 6,558 | 88,223 | -0- |
| 1993 | 05/07/1998 | -0- | 158,167 | -0- | 4,323 | 37,899 | -0- |
| 1995 | 05/07/1998 | -0- | 97,622 | -0- | 46,353 | 36,232 | -0- |
| 1999 | 10/11/2001 | 42,931 | -0- | 58,501 | 35,150 | 22,571 | -0- |
| 2000 | 10/17/2001 | 32,676 | -0- | 57,051 | 345 | 21,870 | -0- |
| 2001 | 10/16/2002 | 25,243 | -0- | 10,774 | -0- | 1,138 | -0- |

Respondent examined petitioners' joint Federal income tax returns for the years in issue and assessed the tax liabilities reported thereon.[2]

On June 29, 2005, respondent mailed to petitioners a notice of intent to levy relating to petitioners' unpaid Federal income tax liabilities for the years in issue.

Petitioners timely filed an appeal with respondent's Appeals Office relating to respondent's June 29, 2005, notice of intent to levy. On September 6, 2006, during the pendency of petitioner's appeal petitioner also filed with respondent a request for equitable relief under section 6015(f) relating to the unpaid joint Federal income tax liabilities for the years in issue. Petitioner attached to her request a Form 12510, Questionnaire for Requesting Spouse, on which petitioner listed $2,150 as petitioners' monthly combined income and $3,675 as petitioners' monthly combined expenses.

_____

[2] During respondent's audit respondent also determined deficiencies in petitioners' joint Federal income taxes for each year in issue. Respondent concedes that petitioner is entitled to relief under sec. 6015(b) for these deficiencies.

On October 31, 2006, petitioners submitted to respondent's Appeals Office a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On the Form 433-A petitioners listed assets with values indicated as follows:

| Assets | Value |
|---|---|
| Cash | $25,848 |
| Boats | 7,000 |
| Snowmobiles | 5,000 |
| Automobiles | -0- |
| Real estate | |
|   Home | 161,000 |
|   Cabin | 85,721 |
|   Rental properties | Unknown |
| Total reported value | $284,569 |

After receiving more information relating to the value of petitioners' rental properties, respondent's Appeals Office determined that petitioners' reasonable collection potential was $521,600.

On the Form 433-A petitioners also listed monthly income of $2,202 and monthly expenses of $3,623 as follows:

| Monthly | Amount |
|---|---|
| Social security income | |
|   Petitioner | $687 |
|   Thomas | 1,515 |
| Other income | -0- |
|     Total income | $2,202 |
| | |
| Expenses | |
|   Food/clothing | 727 |
|   Housing/utilities | 1,182 |
|   Transportation | 1,154 |
|   Health care | 520 |
|   Life insurance | 40 |
|     Total expenses | $3,623 |

On March 12, 2007, respondent mailed to petitioners a notice of determination sustaining respondent's June 29, 2005, notice of intent to levy.

On March 12, 2007, respondent also mailed to petitioner a notice of determination denying petitioner's request for section 6015(f) relief for all years in issue. Respondent concluded that at the time petitioner signed the joint tax returns for the years in issue petitioner had reason to know that tax liabilities were due and were unlikely to be paid. Respondent also determined that although petitioners' monthly expenses exceeded petitioners' monthly income, because petitioners were married and jointly owned assets with a value of at least $284,569 and because petitioners' collection potential was $521,600, petitioner had not established that an economic hardship would result if petitioner were held jointly liable for the unpaid taxes.

On April 5, 2007, petitioners filed a petition relating to respondent's March 12, 2007, adverse determination on the notice of intent to levy and on the request for relief under section 6015(f).

As stated, after settlement of some issues the only issue remaining in dispute is whether petitioner is entitled to relief under section 6015(f) from the unpaid tax liabilities for the years in issue.

On April 15, 2004, petitioner filed her 2003 individual Federal income tax return late reporting taxes due of $4,733, which remain unpaid. On April 20, 2007, petitioner filed her 2005 individual Federal income tax return late reporting no taxes due.

OPINION

Generally, taxpayers filing joint Federal income tax returns are jointly liable for taxes reported due thereon. Sec. 6013(d)(3). However, under section 6015(f)(1) relief from joint liability for Federal income taxes may be available to a requesting spouse where it would be inequitable to hold the requesting spouse liable for a tax underpayment or a tax deficiency.

This Court has jurisdiction to determine whether a requesting spouse is entitled to equitable relief under section 6015(f). Sec. 6015(e); see also Martino v. Commissioner, T.C. Memo. 2009-43; Farmer v. Commissioner, T.C. Memo. 2007-74. Petitioner bears the burden of proving that she is entitled to equitable relief under section 6015(f). See Rule 142(a).

In order to qualify for equitable relief under section 6015(f), a requesting spouse must first satisfy seven so-called threshold eligibility requirements set forth in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297. In particular, the requesting spouse must establish that the tax underpayment or the

tax deficiency is attributable to income of the nonrequesting spouse. Id. sec. 4.01(7), 2003-2 C.B. at 297.

If the income giving rise to the tax underpayment or deficiency is reported on a joint Federal income tax return as earned by the requesting spouse, the income and the tax underpayment or deficiency relating thereto are presumptively attributable to the requesting spouse. Rev. Proc. 2003-61, sec. 4.01(7)(b), 2003-2 C.B. at 297. The requesting spouse may rebut the presumption by introducing evidence to show otherwise. Id. For example, the requesting spouse may establish that her ownership of the assets producing the income was only nominal. Id.

Respondent contends that petitioner fails this threshold eligibility requirement with regard to the portion of AMC's income and the other income that was reported by petitioners on their joint Federal income tax returns as income of petitioner or as income of both petitioner and Thomas, as follows:[3]

---

[3] Respondent concedes that for each year petitioner has satisfied the threshold eligibility requirements for the portions of the AMC and the other income reported by petitioners as Thomas's income.

|       | AMC and Other Income Reported as Income of Petitioner or of Both Petitioner and Thomas | |
|-------|---------|---------|
| Year  | AMC     | Other   |
| 1992  | $2,000  | $1,004  |
| 1999  | 42,931  | 58,501  |
| 2000  | 32,676  | 57,051  |
| 2001  | 25,243  | 10,774  |

Petitioner argues that because Thomas controlled AMC, the rental real estate and the other business activities, as well as the preparation of petitioners' Federal income tax returns for the years in issue, any ownership interest that petitioner had or was reported to have had in AMC and in the real estate and other business activities was only nominal, and therefore that no portion of the above-reported income should be attributed to her (i.e., that her ownership thereof should be treated as nominal for purposes of section 6015(f)).

We disagree. Having reported the above income as hers (or as both hers and Thomas's) for Social Security tax and benefit purposes, petitioner has not established that this purpose and petitioners' reporting should be ignored and that the income should be attributable solely to Thomas. See Golden v. Commissioner, T.C. Memo. 2007-299, affd. 548 F.3d 487 (6th Cir. 2008). Petitioner does not satisfy the threshold eligibility requirements with respect to the income reported as petitioner's or as petitioner's and Thomas's for 1992, 1999, 2000, and 2001.

In the alternative with respect to the above income reported as petitioner's or as petitioner's and Thomas's, and with respect to the AMC and other income reported by petitioners on their joint Federal income tax returns as earned by Thomas (with respect to which petitioner satisfies the threshold eligibility requirements of Rev. Proc. 2003-61, sec. 4.01,[4] we consider the following factors relevant to determine whether petitioner is entitled to relief under sec. 6015(f). Id. sec. 4.03, 2003-2 C.B. at 298.

Marital Status

As of the trial date, petitioners were married and living together. This factor is neutral.

Economic Hardship

Where paying the outstanding tax liabilities would cause the requesting spouse to suffer economic hardship, the economic hardship factor weighs in favor of granting relief under section 6015(f). Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at

---

[4] The income reported as earned by Thomas was as follows:

| | Income Reported as Thomas's | |
| --- | --- | --- |
| Year | AMC | Other |
| 1991 | $128,336 | $130 |
| 1992 | 309,740 | 6,558 |
| 1993 | 158,167 | 4,323 |
| 1995 | 97,622 | 46,353 |
| 1999 | -0- | 35,150 |
| 2000 | -0- | 345 |

298.  A requesting spouse suffers economic hardship if paying the tax liabilities would prevent the taxpayer from paying reasonable basic living expenses.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; Rev. Proc. 2003-61, sec. 4.02(1)(c), 4.03(2)(a)(ii), 2003-2 C.B. at 298.

In determining a reasonable amount for basic living expenses, the Court considers, among other things:  (1) The taxpayer's age and earning potential; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, and transportation; (3) the amount of assets available to pay the taxpayer's expenses; and (4) any other factor bearing on economic hardship.  See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Petitioner argues that because she is nearly 80 years old and has low earning potential and because her monthly expenses are reasonable, if required to pay the tax liabilities in issue she would be unable to pay her basic living expenses.

Petitioner's argument does not consider the $284,569 in assets listed on the Form 433-A that petitioners submitted to respondent.  Those assets are to be included in determining whether petitioner would be able to pay her basic living expenses.  Further, petitioners have not meaningfully challenged respondent's Appeals Office's determination relating to petitioners' $521,600 collection potential.

It appears that the $284,569 in petitioners' assets would offset or be sufficient to pay the total $234,752 joint tax liabilities for the years in issue, and petitioners' $521,600 collection potential suggests that petitioner would not suffer economic hardship if she were required to pay the tax liabilities in issue.

However, recognizing the costs and difficulties in liquidating assets, as well as petitioner's age and low earning potential, we treat the economic hardship factor as neutral.

Knowledge or Reason To Know

In the case of a properly reported but unpaid tax liability we are less likely to grant relief under section 6015(f) if the requesting spouse at the time she signed the Federal income tax return knew or had reason to know that the tax liability reported thereon would not be paid. Washington v. Commissioner, 120 T.C. 137, 151 (2003).

Petitioner argues that because she relied on Thomas to properly prepare their joint Federal income tax returns and to pay any tax liabilities reported thereon, at the time she signed the tax returns she did not know or have reason to know that Thomas would not pay the income taxes relating thereto.

From 1991 through 2001, petitioner knew that petitioners were generally having financial problems relating to family expenses. Petitioner should have learned that petitioners were

not paying their joint Federal income tax liabilities when the settlement was reached in docket No. 3118-97, wherein she was relieved of and wherein Thomas became fully liable for the $80,429 joint income tax liabilities for 1988 and 1989. Because of the family tax and financial problems, petitioner was on notice and should have verified that Thomas would pay the tax liabilities reported on petitioners' Federal income tax returns for the years in issue. See Stolkin v. Commissioner, T.C. Memo. 2008-211; Gonce v. Commissioner, T.C. Memo. 2007-328. This factor weighs against relief.

Significant Benefit

The record does not adequately establish whether petitioner received a significant benefit in excess of normal support from the unpaid tax liabilities. This factor is neutral.

Compliance With Income Tax Laws

As stated, petitioner and Thomas have a history of not timely filing Federal income tax returns and of not paying their tax liabilities. Petitioner filed her individual Federal income tax return late for 2003, and the $4,733 tax liability reported thereon remains unpaid. Further, petitioner filed her Federal income tax return late for 2005. This factor weighs against granting relief.

Conclusion

In summary, of the relevant factors considered two weigh against granting relief, three are neutral, and none weighs in favor of granting relief.

We conclude that petitioner is not entitled to equitable relief under section 6015(f) with regard to any of the AMC and the other income and the Federal income taxes relating thereto reported on petitioners' joint Federal income tax returns for the years in issue.[5]

To reflect the foregoing,

Decision will be entered for respondent.

---

[5] Our conclusion herein would be the same regardless of the Court's standard of review of respondent's determination.