T.C. Memo. 2009-294

UNITED STATES TAX COURT

CALLIE SUE OLSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20384-07.             Filed December 21, 2009.

Callie Sue Olson, pro se.

<u>Kristin M. Timmons</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, <u>Judge</u>:  This case arises from petitioner Callie

Sue Olson's request for "innocent spouse" relief from joint

liability under section 6015[1] for 2003 taxes--i.e., an income tax

---

[1]Unless otherwise indicated, all citations of sections refer
to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and
all citations of Rules refer to the Tax Court Rules of Practice
(continued...)

deficiency of $13,600, an addition to tax of $3,400 under section 6651(a)(1) for failure to file the return on time, and an accuracy-related penalty of $2,720 under section 6662. In a statutory notice of deficiency issued to Ms. Olson and her husband on June 12, 2007,[2] the Internal Revenue Service (IRS) denied Ms. Olson's request for relief from joint liability; and in response, Ms. Olson timely filed a petition with the Court on September 10, 2007. The issue for decision is whether Ms. Olson is entitled under section 6015 to relief from joint liability. We find that Ms. Olson is not entitled to such relief.

## FINDINGS OF FACT

Petitioner Callie Sue Olson has been married for over 30 years to Gregory John Olson, and they were married when they filed their 2003 joint income tax return, when she filed her petition in this case, and when they testified at the trial in this case. At all relevant times they lived in the same household together. They both graduated from high school; and thereafter Ms. Olson had one year and Mr. Olson had two years of vocational schooling.

---

[1](...continued)
and Procedure.

[2]The 2003 deficiency itself was disputed in Gregory John Olson v. Commissioner, docket No. 20383-07, in which case Ms. Olson was not a petitioner. Mr. Olson conceded the case, and decision was entered on November 17, 2009, sustaining against him the IRS's deficiency determination.

For about 20 years before 2003, Ms. Olson was employed at a hospital as a pharmacy technician. In those years she received from her employer a Form W-2, Wage and Tax Statement, detailing her wages and withholding, and her income was reported on joint tax returns that Mr. Olson prepared. In September 2002 Ms. Olson quit work at the hospital. Thereafter, their household received no income from her hospital employment, and all its income was derived from her husband's business, known as "Fun Stuff Rental", which provided casino game nights for customers. After quitting her hospital employment, Ms. Olson assisted in that business.

Mr. and Ms. Olson both considered that Fun Stuff Rental was principally Mr. Olson's business and that Ms. Olson was a helper to Mr. Olson. However, she was active in the business and, in her trial testimony, often referred to the business as "we". She answered business calls on the phone; did mailings for the business; set up, took down, and cleaned up equipment; and worked some of the jobs.

Ms. Olson did not keep the books for Fun Stuff Rental. The records for the business were kept in an unlocked file cabinet in a room in their home to which Ms. Olson had access, but she did not consult those records. Mail for the business arrived at the house along with personal mail. Ms. Olson had access to the business mail, but she handed it over to Mr. Olson to open. She did not know how much revenue was coming into the business

because she "never took the opportunity to look."  Ms. Olson testified about the situation as follows:

> THE COURT: * * * Was Mr. Olson kind of secretive or guarded about information for the business or was he open about it?
>
> THE WITNESS:  Open.
>
> THE COURT:  So is it fair to say that you could have gotten any information that you wanted to get if you thought it was your business or duty to get it?
>
> THE WITNESS:  I could have.

Mr. Olson was not an abusive or domineering husband.

The checks for the business bore the name "Fun Stuff Rental" and underneath that title the caption "Greg & Callie's".  Mr. and Ms. Olson both had check-signing authority for the account of Fun Stuff Rental.  At Mr. Olson's direction, Ms. Olson sometimes wrote checks to pay the "help" (i.e., individuals paid by the hour to work on specific jobs).  Mr. Olson generally wrote the checks from that account to pay the other bills of the business.  Ms. Olson had her own separate savings account.

Ms. Olson testified--and we find that she believed--that some of the money generated by the Fun Stuff Rental business was put back into the business, and some was used to pay the everyday living expenses of the family.  Instances of the payment of family living expenses were checks written from the Fun Stuff Rental account by Ms. Olson to pay the household electric bill, to pay the dental insurance bill, and to make weekly

contributions to the church that the Olsons attended.  One significant instance in 2003 of money being invested in the business was (according to the return) the purchase of a vehicle for $39,172 in July.

For the year 2003 Mr. Olson prepared a Form 1040, U.S. Individual Income Tax Return,[3] for the couple to file jointly, and Ms. Olson had no role in the preparation of it.  She signed the return on December 29, 2004, but did not review the return before she signed it.  The return showed no tax due.  Attached to that return was a Schedule C, Profit or Loss From Business, for a business entitled "Fun Stuff Rental".  The "Name of proprietor" was given as "Greg Olson", and the address for the business was the same address as the Olsons' personal residence.  The Schedule C reported gross income of $86,747 and expenses of $97,123, for a loss of $10,376.  The expenses consisted of depreciation expenses totaling $27,104 and other expenses totaling $70,019.  In addition to the Fun Stuff Rental loss of $10,376, the return also reported a capital loss of $3,000

---

[3]In the "Filing Status" block on the first page of the return, neither the block for "Married filing jointly" nor any other block is checked.  However, the names of both Mr. and Ms. Olson appear on the appropriate lines (with Ms. Olson's name on the line marked "If a joint return, spouse's first name and initial"); and Ms. Olson signed in the signature block on the second page, under "Spouse's signature.  If a joint return, both must sign."  The IRS treated the return as a joint return, and Ms. Olson's request for innocent spouse relief characterized the return as a joint return.

carried forward from 2002 and a loss of $999 from a partnership called "Teresa's Smoothies", so that, after income items totaling $1,275, the return reported an overall loss of $13,100.

It appears that the Olsons did not file returns for the years 2004 and 2005, which are not at issue in this case.

The IRS conducted an audit for the Olsons' taxable years 2003 (for which they had filed the joint return), 2004, and 2005. In August 2006 Ms. Olson received from the IRS agent a Form 4549, Income Tax Examination Changes, proposing a joint tax liability for 2003. In response to the Form 4549, Ms. Olson filed a Form 8857, Request for Innocent Spouse Relief, on September 12, 2006.

On June 12, 2007, the IRS issued the notice of deficiency for tax year 2003, denying Ms. Olson's request for innocent spouse relief and determining the deficiency described above. The copy of the notice of deficiency attached to the complaint consists only of the first two pages, and not the supporting computations, and the record before us includes no complete copy. Consequently, the record does not show whether the deficiency was attributable solely to adjustments related to Fun Stuff Rental; but the parties both argue as if it was, so we assume that the deficiency was attributable solely to Fun Stuff Rental. Even on that assumption, the record does not show whether the deficiency arose from adjustments that increased the revenue of Fun Stuff

Rental, or from adjustments that decreased the deductions of Fun Stuff Rental, or from both kinds of adjustments.

Also on June 12, 2007, the IRS issued a notice of deficiency for the years 2004 and 2005 to Mr. Olson alone. On September 10, 2007, Ms. Olson filed the petition in this case, requesting "innocent spouse" relief for the year 2003. On the same date, Mr. Olson filed his own separate petition in docket No. 20383-07, requesting redetermination of the deficiencies that the IRS had determined for 2003, and a separate petition in docket No. 20385-07, requesting redetermination of the deficiencies that the IRS had determined for 2004 and 2005. At the time they filed their petitions, the Olsons resided in Minnesota. Their three cases were consolidated on June 4, 2009.

The three cases were called from the calendar on September 14, 2009, in St. Paul, Minnesota. At that time Mr. Olson conceded his two deficiency cases (docket No. 20383-07 for 2003 and docket No. 20385-07 for 2004 and 2005). Those concessions were effectuated in decisions entered November 17, 2009. After those concessions, only Ms. Olson's innocent spouse claim remained, and her claim was tried on September 14, 2009. Ms. Olson and her husband were the only witnesses who testified.

OPINION

I.   Standard and Scope of Review

When determining whether a taxpayer is entitled to relief under section 6015 (whether under subsection (b), (c), or (f)), we conduct a trial de novo, in which we may consider evidence introduced at trial which was not included in the administrative record.  Porter v. Commissioner, 130 T.C. 115, 117 (2008).  For all claims under section 6015 (including claims for equitable relief under section 6015(f)), we do not review for abuse of discretion but instead employ a de novo standard of review. Porter v. Commissioner, 132 T.C. __ (2009).  Respondent contends, however, that when the Court reviews a denial of relief under section 6015(f), it must apply an abuse-of-discretion standard of review and must limit the scope of its review to the administrative record.  We have held otherwise in the two Porter opinions cited above, and we do not repeat in this opinion the reasons for those holdings.

An appeal in this case would lie to the U.S. Court of Appeals for the Eighth Circuit.  That court held in Robinette v. Commissioner, 439 F.3d 455, 460 (8th Cir. 2006), revg. 123 T.C. 85 (2004), that the Tax Court's scope of review in a collection due process (CDP) proceeding under sections 6320 and 6330 should

be limited to the administrative record.[4]  However, the CDP

provisions of sections 6320 and 6330 are different from the

"innocent spouse" provisions of section 6015, and those

differences include the following:

The CDP petitioner's agency-level remedies are described at

some length in section 6330(a), (b), and (c), and section

6330(d)(2) requires the CDP petitioner to "exhaust[] all

administrative remedies"; but section 6015 makes no explicit

provision of agency-level remedies for "innocent spouse" relief

and says nothing about exhausting them.  The agency's CDP action

is repeatedly characterized in section 6330 as a "hearing", but

no agency hearing is explicitly provided for the "innocent

spouse" in section 6015.[5]  The taxpayer's CDP submission to the

Tax Court under section 6330(d) is called an "appeal" and is not

referred to as a "petition" anywhere in the statute, while

_____

[4]This Court held to the contrary in Robinette v.
Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455, 460 (8th
Cir. 2006), and in CDP cases we generally do not follow the
record rule.  However, in cases appealable to Courts of Appeals
that follow the record rule, we do follow those precedents
pursuant to our "Golsen rule".  See Golsen v. Commissioner, 54
T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).
However, as we noted in Porter v. Commissioner, 130 T.C. 115, 120
(2008), the Court of Appeals' decision in Robinette interpreting
section 6330 does not govern the interpretation of section 6015.

[5]See Porter v. Commissioner, supra, 130 T.C. at 135
(Thornton, J., concurring); Friday v. Commissioner, 124 T.C. 220,
222 (2005) ("There is in section 6015 no analog to section 6330
granting the Court jurisdiction after a hearing at the
Commissioner's Appeals Office").

section 6015(e) provides that the innocent spouse files a "petition" that is nowhere called an "appeal". The Tax Court "determine[s]" innocent spouse relief, sec. 6015(e)(1)(A), but has "jurisdiction with respect to such matter" in the case of an appeal from the agency's CDP determination, sec. 6330(d)(1).[6]

All these differences in statutory vocabulary suggest that even if a CDP case under sections 6320 and 6330 is held to be governed by a "record rule", as the Court of Appeals for the Eighth Circuit holds, the same rule is not warranted for an "innocent spouse" case under section 6015. We therefore follow our Porter decisions and apply a de novo standard of review and scope of review in deciding this case under section 6015.

II. Joint and Several Liability and Section 6015 Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. (26 C.F.R.). That is, each spouse is responsible for the entire joint tax liability. However, section 6015 provides for relief from joint liability for spouses who meet the conditions of subsection (b) and for divorced and separated persons under subsection (c), and provides equitable relief in subsection (f) when the relief provided in

---

[6]See Porter v. Commissioner, supra at 120; id. at 134-135 (Thornton, J., concurring).

subsections (b) and (c) is not available.  Except as otherwise provided in section 6015, the taxpayer bears the burden of proof.  See sec. 6015(c)(2); Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  Because Ms. Olson generally requests relief under section 6015, we analyze her eligibility under all three subsections.

A.  <u>Subsection (b) Relief</u>

Section 6015 provides as follows in subsections (a) and (b)(1):

> SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.
>
> (a)  In General.--Notwithstanding section 6013(d)(3)--
>> (1)  an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b); and
>>
>> (2)  if such individual is eligible to elect the application of subsection (c), such individual may, in addition to any election under paragraph (1), elect to limit such individual's liability for any deficiency with respect to such joint return in the manner prescribed under subsection (c).
>
> Any determination under this section shall be made without regard to community property laws.
>
> (b)  Procedures for Relief from Liability Applicable to All Joint Filers.--
>> (1)  In general.--Under procedures prescribed by the Secretary, if--
>>> (A)  a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

Section 6015(b)(1) thus authorizes "innocent spouse" relief if a taxpayer satisfies all five of the requirements set out in subparagraphs (A) through (E). Respondent does not dispute that Ms. Olson meets the requirements of subparagraphs (A) (joint return) and (E) (timely election), but he denies that she meets the other three requirements in subparagraphs (B), (C), and (D). We therefore discuss those three.

### 1. Erroneous Item of Non-requesting Spouse (Section 6015(b)(1)(B))

Ms. Olson has the burden to prove that the understatement of tax on the joint return was attributable to erroneous items of Mr. Olson and not of Ms. Olson. See Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). However, the erroneous item on the return was the business income of Fun Stuff Rental,[7] which was the family business. The business is identified on the company checks as "Greg & Callie's" (emphasis added), and Ms. Olson was active in the business-- answering the phone, sending out mail, paying the help, handling the equipment, and working some of the jobs. Mr. and Ms. Olson's work was collaborative and mutual. Ms. Olson did not prove that the Fun Stuff Rental income was an item of Mr. Olson alone, and she did not offer any evidence of how the revenue could be allocated between the two spouses. See Ishizaki v. Commissioner, T.C. Memo. 2001-318, 82 T.C.M. (CCH) 995, 1000-1001 (2001) (income is not an item of one spouse when the other "actively and

---

[7]Ms. Olson did not argue that the understatement was attributable to the erroneous exclusion of one or more specific revenue items of which she could not have been aware or that it was attributable to the erroneous deduction of one or more specific items of expense whose legitimacy she could not have known. Since she did not show what particular items contributing to the income of Fun Stuff Rental gave rise to the understatement, and since in any event the bank statements and other records were all accessible to her, this argument could not have prevailed.

substantially participated").  We hold that Ms. Olson did not prove that she meets the requirement of section 6015(b)(1)(B).

>    2.    Requesting Spouse's Knowledge
>          (Section 6015(b)(1)(C))

As for the requirement of section 6015(b)(1)(C), Ms. Olson did make a credible showing that "in signing the return * * * she did not know * * * that there was such understatement", but she did <u>not</u> prove that she "had no reason to know".[8]  On the contrary, her testimony showed that she did have reason to know that the return she signed understated the liability.  She had quit her hospital job the prior year, so that in 2003 the family's only income source was Fun Stuff Rental; she saw that family expenses were being paid from the revenues of the business; she had access to all the records of the business; yet

---

[8]See also sec. 6015-2(c), Income Tax Regs. (26 C.F.R.) ("A requesting spouse has * * * reason to know of an understatement * * * if a reasonable person in similar circumstances would have known of the understatement.  * * *  All of the facts and circumstances are considered in determining whether a requesting spouse had reason to know of an understatement.  The facts and circumstances that are considered include, but are not limited to, the nature of the erroneous item and the amount of the erroneous item relative to other items; the couple's financial situation; the requesting spouse's educational background and business experience; the extent of the requesting spouse's participation in the activity that resulted in the erroneous item; whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question; and whether the erroneous item represented a departure from a recurring pattern reflected in prior years' returns (e.g., omitted income from an investment regularly reported on prior years' returns)").

she signed a joint return on which Fun Stuff Rental reported a loss of $10,376. From the facts immediately available to her, she had reason to know that Fun Stuff Rental had not really experienced a loss of $10,376.

Ms. Olson did not contend that she noticed the reported tax loss but thought that the business might nonetheless have produced a positive cash flow. Such a contention would fail on the facts of this case, even though the expense deductions did include depreciation (which was not an out-of-pocket expense) totaling $27,104. A portion of the reported depreciation was on the vehicle that, according to the return, was purchased for $39,172 in July 2003 (i.e., in the taxable year at issue). Thus, the return not only reported a taxable loss of $10,376 but also revealed a considerable <u>negative</u> cash flow--i.e., gross income of $86,747, a vehicle purchase of $39,172, and out-of-pocket expenses totaling $70,019, for an ostensible negative cash flow of $22,444. Yet somehow Ms. Olson paid living expenses from the checking account of Fun Stuff Rental.

The loss reported on the return that Ms. Olson signed simply cannot be reconciled with her knowledge of the business and the family activities. If she did not know that the return she signed understated the income of Fun Stuff Rental, it is because she chose to pay no attention to the matter. But as the Court of Appeals for the Eighth Circuit has observed:

a taxpayer cannot satisfy the lack of knowledge requirement by claiming that he or she failed to review the joint return before signing it. "Section 6013(e) is designed to protect the innocent, not the intentionally ignorant." Cohen v. Commissioner, T.C. Memo. 1987-537 (Oct. 20, 1987). * * *

Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. T.C. Memo. 1990-101. We hold that Ms. Olson did not prove that she had no reason to know that the loss reported on the joint return that she signed was erroneous. Rather, she could and should have known that the reported loss was erroneous.

      3.    Inequitable To Hold Liable (Section 6015(b)(1)(D))

As for the requirement of section 6015(b)(1)(D), Ms. Olson did not show that "it is inequitable to hold * * * [her] liable for the deficiency in tax". The statute provides that this judgment on the equities is to be made "taking into account all the facts and circumstances".[9] Since this "inequitable"

---

[9]See also sec. 1.6015-2(d), Income Tax Regs. (26 C.F.R.) ("All of the facts and circumstances are considered in determining whether it is inequitable to hold a requesting spouse jointly and severally liable for an understatement. One relevant factor for this purpose is whether the requesting spouse significantly benefitted, directly or indirectly, from the understatement. A significant benefit is any benefit in excess of normal support. Evidence of direct or indirect benefit may consist of transfers of property or rights to property, including transfers that may be received several years after the year of the understatement. Thus, for example, if a requesting spouse receives property (including life insurance proceeds) from the nonrequesting spouse that is beyond normal support and traceable to items omitted from gross income that are attributable to the nonrequesting spouse, the requesting spouse will be considered to have received significant benefit from those items. Other factors that may also be taken into account, if the situation
(continued...)

requirement under section 6015(b)(1)(D) is equivalent to the "inequitable" requirement under section 6015(f)(1), which is discussed below in part II.C, we relegate our analysis to that part of this opinion. In sum, Ms. Olson did not prove that it is inequitable to hold her jointly liable.

Thus, Ms. Olson fails to satisfy the requirements of subparagraphs (B), (C), and (D) of section 6015(b)(1) and does not qualify for relief under section 6015(b).

B.   Subsection (c) Relief.

Section 6015(c) is entitled "Procedures to Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together." Because Mr. and Ms. Olson were married in the year in issue and continue to be married, Ms. Olson is not entitled to relief under subsection (c).

C.   Equitable Relief Under Subsection (f)

1.   Standards Applicable Under Section 6015(f)

Subsection (f) of section 6015 provides as follows:

---

[9](...continued)
warrants, include the fact that the requesting spouse has been deserted by the nonrequesting spouse, the fact that the spouses have been divorced or separated, or that the requesting spouse received benefit on the return from the understatement. For guidance concerning the criteria to be used in determining whether it is inequitable to hold a requesting spouse jointly and severally liable under this section, see Rev. Proc. 2000-15 (2000-1 C.B. 447), or other guidance published by the Treasury and IRS (see § 601.601(d)(2) of this chapter)"). The revenue procedure cited in the regulation has been superseded by Revenue Procedure 2003-61, 2003-2 C.B. 296.

SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

Thus, a taxpayer may be relieved from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable.

In accord with the statutory provision that section 6015(f) relief is to be granted "[u]nder procedures prescribed by the Secretary," the Commissioner has issued revenue procedures to guide IRS employees in determining whether a requesting spouse is entitled to relief from joint and several liability. See Rev. Proc. 2003-61, supra, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447. Revenue Procedure 2003-61 provides a three-step analysis for IRS employees to use in deciding whether to grant relief: Section 4.01 (discussed below) lists seven threshold conditions that must be met for any relief to be granted; section 4.02, not applicable here, lists circumstances in which relief will ordinarily be granted as to liabilities (unlike those at issue here) that were reported on a return; and section 4.03 (discussed below) sets out eight non-

exclusive factors to be considered in determining whether equitable relief should be granted.

The Tax Court has been given express authority to review the IRS's denial of equitable relief under section 6015(f). Section 6015(e)(1) provides:

> [I]n the case of an individual who requests equitable relief under subsection (f) * * * [i]n addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * *.

In "determin[ing] the appropriate relief", the Court reviews the IRS's three-step analysis prescribed in its revenue procedure, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), but our review is not circumscribed by that matrix. Rather, we consider "all the facts and circumstances" in determining whether the taxpayer is entitled to "innocent spouse" relief. Sec. 6015(f)(1); see Porter v. Commissioner, 132 T.C. at __ (slip op. at 12-13); Lantz v. Commissioner, 132 T.C. __ (2009).

> 2. Evaluation of Ms. Olson's Entitlement to Relief Under Section 6015(f)

As we now show, the IRS correctly employed the analysis prescribed in Revenue Procedure 2003-61, supra, to determine that Ms. Olson is not entitled to equitable relief under section 6015(f). We find that that the IRS's analysis did not exclude any relevant fact or circumstance that ought to be taken

into account, and that relief from joint liability is not appropriate in this case.

a.    Threshold Eligibility Under
        Rev. Proc. 2003-61, Sec. 4.01

Revenue Procedure 2003-61 sets out, in section 4.01, seven threshold conditions that all requesting spouses must meet in order for the IRS to grant relief pursuant to section 6015(f).[10] In his pretrial memorandum respondent asserts generally that Ms. Olson "fails to meet the threshold eligibility requirements" but does not specify which one or ones she fails to meet.  It appears that she satisfies the first six but that she fails to satisfy the seventh--i.e., "The income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return".  As we explained above in part II.A.1, Ms. Olson failed

---

[10]See Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297 (all requesting spouses must meet seven threshold conditions:  (i) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse; (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return).  As to requirement (iii) above, we have held that the two-year rule is invalid.  See Lantz v. Commissioner, 132 T.C. __ (2009).

to show that the underreported income of Fun Stuff Rental was an item attributable to Mr. Olson alone. Rather, Ms. Olson was also active in the business, so that its income is properly attributable not only to Mr. Olson but also to her. Ms. Olson therefore fails to meet the threshold conditions for the IRS to grant equitable relief.

We nonetheless proceed to consider "[i]n the alternative", see O'Meara v. Commissioner, T.C. Memo. 2009-71, whether there are any additional facts and circumstances that would justify relief for Ms. Olson. We find that there are not.

### b. Facts-and-Circumstances Test of Rev. Proc. 2003-61, Sec. 4.03

Where the requesting spouse satisfies the threshold conditions of section 4.01 of Revenue Procedure 2003-61 (not the case here), the IRS may grant relief under the facts-and-circumstances test of section 4.03. Under that test the IRS considers a "nonexclusive list of factors" in section 4.03(2)(a) to determine whether "taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable": (i) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (ii) whether the requesting spouse would suffer economic hardship if not granted relief; (iii) whether the requesting spouse knew or had reason to know that the other spouse would not pay the liability; (iv) whether the nonrequesting spouse has a legal obligation to

pay the outstanding tax liability pursuant to a divorce decree or agreement; (v) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency; and (vi) whether the requesting spouse has made a good faith effort to comply with the tax laws for the taxable years following the taxable year to which the request for such relief relates.  Other factors that the IRS considers under section 4.03(2)(b) are (i) whether the nonrequesting spouse abused the requesting spouse and (ii) whether the requesting spouse was in poor mental or physical health at the time he or she signed the tax return or at the time he or she requested relief.

We consider these factors and any other relevant facts and circumstances in determining whether the taxpayer is entitled to "innocent spouse" relief.  No single factor is determinative, and all factors are to be considered and weighted appropriately. Haigh v. Commissioner, T.C. Memo. 2009-140.  In this case the IRS's factors provide a sufficient basis for evaluating Ms. Olson's claim for equitable relief, and the record suggests no additional facts and circumstances that should be considered. We therefore address the factors listed in section 4.03 of Revenue Procedure 2003-61.

### i.   Marital Status

Ms. Olson was not divorced, separated, or living apart from Mr. Olson when she filed her request for "innocent spouse" relief.  This factor weighs against granting relief.  See McKnight v. Commissioner, T.C. Memo. 2006-155.

### ii.  Economic Hardship

Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136.  Ms. Olson made no showing of economic hardship, so this factor weighs against granting relief.

### iii. Knowledge or Reason To Know

As is discussed above in part II.A.2, Ms. Olson has failed to establish that she did not have reason to know of the item giving rise to the deficiency (i.e., the income of Fun Stuff Rental).  This factor weighs against granting relief.  See Beatty v. Commissioner, T.C. Memo. 2007-167.

### iv.  Nonrequesting Spouse's Legal Obligation

Where a divorce decree or other court order gives the nonrequesting spouse a legal obligation to pay the liability, this fact can weigh in favor of granting relief to the requesting spouse.  No divorce decree or separation order imposes such a liability on Mr. Olson, and this factor therefore weighs against granting relief to Ms. Olson.

### v.    Significant Benefit

While Ms. Olson did share in the benefit of the Fun Stuff Rental income in 2003 and did share with Mr. Olson the benefit of the money that they did not use to pay their tax liability, there is nothing in the record that indicates that Ms. Olson "received significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the liability", and respondent does not contend that she did.  Therefore, this factor weighs moderately in favor of relief.  See Magee v. Commissioner, T.C. Memo. 2005-263.

### vi.    Compliance With Federal Tax Laws

As of the time the IRS issued the notice of deficiency that denied Ms. Olson's request for relief for 2003, the Olsons had not filed returns for 2004 and 2005, so respondent contends that Ms. Olson had not (for purposes of Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi)) "made a good faith effort to comply with income tax laws in the taxable years following the taxable year or years to which the request for relief relates."  We have found that in 2003 the income of Fun Stuff Rental was an item of both Mr. and Ms. Olson.  However, the record is not clear on this point as to 2004 and 2005; and when the IRS determined deficiencies for 2004 and 2005, it issued the notice of deficiency to Mr. Olson only.  Since this factor, even if found in Ms. Olson's favor, would not sufficiently tip the scales to justify relief, we do not decide

this issue and instead assume arguendo that this factor weighs in favor of relief.  See Fox v. Commissioner, T.C. Memo. 2006-22.

### vii.  Abuse

There is no evidence or allegation of abuse by Mr. Olson. Therefore, this factor is neutral.  See Magee v. Commissioner, supra.

### viii.  Mental or Physical Health

Ms. Olson has not alleged, nor does the record show, that her mental or physical health was poor at the relevant times. Therefore, this factor is neutral.  See id.

When we weigh the facts and circumstances implicated in these eight factors, we find that Ms. Olson is not entitled to relief.   Two factors are neutral, no more than two factors weigh in favor of relief, and at least four factors weigh against relief.  We find that the two favorable factors (subsequent compliance and lack of significant benefit) are easily outweighed by the four unfavorable factors:  Ms. Olson lived with and continues to live with Mr. Olson; she showed no economic hardship that would result if relief were not granted; she should have known of the understatement reflected on the return; and Mr. Olson is not under any order or decree to pay the liability. As a result, when the facts and circumstances are weighed, Ms. Olson is not entitled to "innocent spouse" relief under

section 6015(f) with respect to the Olsons' joint Federal income tax liability for 2003.

In sum, we find that Ms. Olson is not entitled to relief from joint liability under section 6015(b), (c), or (f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.