T.C. Memo. 2016-169

UNITED STATES TAX COURT

ADETUTU CANTY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28483-14.                    Filed September 13, 2016.

Thomas F. Decaro, Jr., for petitioner.

Han Huang, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  This case arises from respondent's denial of petitioner's request for relief from joint and several liability under section 6015 for the taxable years 2010 and 2011.[1]

---

[1]In her pretrial memorandum petitioner concedes that she does not satisfy the requirements of sec. 6015(c) because she is still married to and living with the

(continued...)

[*2]   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for all relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Maryland at the time she filed her petition.

Petitioner married Charles Canty in July 1986 and was married to Mr. Canty throughout the taxable years 2010 and 2011.  Petitioner and Mr. Canty are still married and live together.

Petitioner has a bachelor's degree in economics and a master's degree in business and public administration.  Since 2008 petitioner has been employed by the Nuclear Regulatory Commission as a financial management analyst.  Petitioner earned $88,241 and $84,999 in taxable wages and salary for the taxable years 2010 and 2011, respectively.  Petitioner is currently still employed as a financial management analyst with an annual salary of $107,000.

---

[1](...continued)
nonrequesting spouse.  See sec. 6015(c)(3)(A).

[*3]  During the taxable years 2010 and 2011 Mr. Canty owned and operated the Charles Canty Law Office (law office) in Washington, D.C.  Mr. Canty prepared his and petitioner's joint Forms 1040, U.S. Individual Income Tax Return, for the taxable years 2010 and 2011.  A Schedule C, Profit or Loss From Business, was attached to the 2010 and 2011 returns reporting the activity of the law office.  The 2010 Schedule C reported gross receipts of zero, returns and allowances of $66,981, net gross receipts of $123,334, and net profit of $39,452.  The 2011 Schedule C reported gross receipts of $148,119, returns and allowances of $42,100, net gross receipts of $106,019, and net profit of $3,512.  Neither petitioner nor Mr. Canty made estimated tax payments with respect to the law office activity for the taxable years 2010 and 2011.

Petitioner did not ask to review the returns for the taxable years 2010 and 2011 before they were filed.  Petitioner was not forced to sign the returns for the taxable years 2010 and 2011 under duress, threat of harm, or other form of coercion.  At the time she signed the tax returns for 2010 and 2011 petitioner had no mental or physical health problems which prevented her from understanding the contents of the tax returns.  Petitioner was not a victim of spousal abuse or domestic violence during her marriage to Mr. Canty.

[*4]   On September 9, 2013, a notice of deficiency was mailed to petitioner and Mr. Canty for their taxable years 2010 and 2011.  In the notice of deficiency respondent made adjustments to the Schedule C income and expenses as follows:

| Income/Expense | TY 2010 | TY 2011 |
| --- | --- | --- |
| Business use of home | $7,553.01 | $4,379.28 |
| Other | 8,602.00 | 8,602.00 |
| Utilities | 1,219.00 | 1,277.00 |
| Meals and entertainment | 2,634.00 | 3,450.00 |
| Travel | 1,363.00 | 2,893.00 |
| Rent/lease (other business property) | 27,600.00 | 27,600.00 |
| Office | 8,763.00 | 9,354.00 |
| Insurance (not health) | 3,600.00 | 4,200.00 |
| Depreciation and sec. 179 | 2,339.00 | 3,853.00 |
| Contract labor | 5,325.00 | 5,635.00 |
| Advertising | 2,092.00 | 3,300.00 |
| Car and truck | --- | 13,769.51 |
| Gross receipts/sales | 8,000.00 | --- |

In the notice of deficiency respondent made adjustments to non-Schedule C income, deductions, and credits as follows:

| Item | TY 2010 | TY 2011 |
| --- | --- | --- |
| Taxable interest | $94 | --- |
| Self-employed health insurance | 3,470 | --- |
| Student loan interest deduction | 1,590 | $2,113 |
| Itemized deductions | 17,811 | 20,594 |
| Tuition/fees deduction | | 4,000 |
| Education credit | 3,000 | 2,000 |
| Making work pay & | | |
| Government retiree credits | 800 | --- |
| Refundable education credit | 2,000 | --- |

[*5] Neither petitioner nor Mr. Canty petitioned the Court in response to the notice of deficiency.

On March 24, 2014, respondent assessed against petitioner and Mr. Canty with respect to the taxable year 2010: (1) additional taxes of $37,483; (2) interest of $4,700.15; (3) an accuracy-related penalty under section 6662 of $8,056.60; and (4) a failure to pay timely addition to tax of $476. On the same date respondent assessed against petitioner and Mr. Canty with respect to the taxable year 2011: (1) additional taxes of $36,297; (2) interest of $2,602.08; and (3) an accuracy-related penalty under section 6662 of $7,259.40.

On October 23, 2013, respondent received from petitioner a Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability for the taxable years 2010 and 2011. Petitioner explained in an attachment to the Form 8857 as follows:

> The Taxpayer was not involved in the operating of Spouse's legal practice and had now [sic] knowledge of the finances of the business. Therefore, Taxpayer had no way to determine the accuracy of the figures reported on the 2010 and 2011 tax returns with regard to the business. The Taxpayer and Spouse have separate finances. The Taxpayer was not involved in the preparation of either the 2010 or 2011 tax returns. The Taxpayer gave her documentation to Spouse, and he prepared the returns and filed them electronically without the Taxpayer having reviewed them. * * *

**[\*6]** Petitioner also indicated in the Form 8857 that (1) she did not maintain a joint account with Mr. Canty for the taxable years 2010 and 2011, and (2) there were large expenses made during 2010 and 2011, such as family vacations, a trip to Nigeria, and the purchase of a vehicle for petitioner's daughter. Petitioner's Form 8857 further states that she has: (1) monthly household income of $13,208.08; (2) monthly household expenses of $10,113.87; and (3) assets with a net value of $152,411.68.

On May 8, 2014, respondent issued to petitioner a preliminary determination denying petitioner relief from joint and several liability for the taxable years 2010 and 2011. On May 28, 2014, petitioner submitted a Form 12509, Statement of Disagreement, which petitioner signed and dated May 20, 2014. On November 5, 2014, the Internal Revenue Service (IRS) Office of Appeals issued a Final Appeals Determination (final determination) denying petitioner's request for relief from joint and several liability in full. The final determination listed the following reasons for denial: (1) petitioner knew, or had reason to know, of the income or deductions that caused the additional tax; (2) petitioner is not eligible because of her current marital status; and (3) petitioner did not show that it would be unfair to hold her responsible. Petitioner timely petitioned the Court for review of the final determination.

**[*7]** Petitioner filed her income tax return for the taxable year 2012 on April 29, 2014, and was assessed additions to tax for late filing and late payment. Petitioner's account balance for the taxable year 2012 is currently satisfied. Petitioner is currently compliant with all Federal income tax obligations for the taxable years 2013 and 2014.

OPINION

Petitioner asks this Court to review respondent's final determination denying her relief from joint and several liability for the taxable years 2010 and 2011. A married taxpayer may elect to file a joint Federal income tax return with his or her spouse. Sec. 6013(a). Generally, after making the election, each spouse is jointly and severally liable for the entire tax shown on the return or otherwise determined to be due. Sec. 6013(d)(3). However, section 6015 provides relief from joint and several liability for spouses who meet the conditions of subsection (b), and it provides for equitable relief in subsection (f) when the relief provided for in other subsections is not available. Olson v. Commissioner, T.C. Memo. 2009-294, 2009 Tax Ct. Memo LEXIS 300, at *12.

The Tax Court has jurisdiction to review respondent's denial of petitioner's request for relief under section 6015. See sec. 6015(e)(1). Both the scope and

**[\*8]** standard of review in cases requesting relief from joint and several income tax liability are de novo. <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009). Except as otherwise provided in section 6015, the spouse requesting relief bears the burden of proof. Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), <u>aff'd</u>, 101 F. App'x 34 (6th Cir. 2004).

I. <u>Section 6015(b)</u>

Section 6015(b)(1) authorizes the Commissioner to grant relief from joint and several liability for tax if the taxpayer requesting relief satisfies each of the following five requirements:

> (A) a joint return has been made for a taxable year;
>
> (B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;
>
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
>
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and
>
> (E) the other individual elects * * * the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

[*9] The requirements of section 6015(b)(1) are conjunctive, and therefore the failure of a requesting spouse to satisfy any one of the elements precludes relief. Alt v. Commissioner, 119 T.C. at 313. Respondent concedes that petitioner satisfies the requirements of section 6015(b)(1)(A) and (E) but asserts that petitioner does not meet the requirements of section 6015(b)(1)(B), (C), or (D).

Section 6015(b)(1)(C) provides that in order to obtain relief the requesting spouse must establish that she did not know, and had no reason to know, that there was an understatement. A requesting spouse has reason to know of an understatement "if a reasonable person in similar circumstances would have known of the understatement." Sec. 1.6015-2(c), Income Tax Regs. The facts and circumstances that are considered include, among other things, whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question. Id. Petitioner bears the burden of proving that she satisfies the requirements of section 6015(b)(1)(C). See Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), aff'd, 992 F.2d 1132 (11th Cir. 1993).[2]

---

[2]The no-knowledge-of-the-understatement requirement in sec. 6015(b)(1)(C) is virtually identical to the requirement of former sec. 6013(e)(1)(C); therefore, cases interpreting sec. 6013(e) remain instructive to our analysis. Jonson v. Commissioner, 118 T.C. 106, 115 (2002), aff'd, 353 F.3d

(continued...)

**[*10]** Petitioner claims that she had "no knowledge" of the erroneous information on the law office's Schedules C. Even if we were to believe petitioner that she had no knowledge of the income and expenses attributable to the law office, a reasonable person in similar circumstances would have reviewed the tax returns before filing and inquired about certain items reported on the return. See sec. 1.6015-2(c), Income Tax Regs. The Schedule C for the taxable year 2010 reported gross receipts of zero, returns and allowances of $66,981, net gross receipts of $123,334, and net profit of $39,452. In her posttrial brief petitioner acknowledges that the zero gross receipts "is an obvious error, since the Schedule C for 2010 reflects gross income." Petitioner is a highly educated individual who works as a financial management analyst, and a cursory review of the 2010 tax return would have revealed this "obvious error".

The law office's 2011 Schedule C reported gross receipts of $148,119, returns and allowances of $42,100, net gross receipts of $106,019, and net profit of $3,512. Petitioner acknowledged at trial that the net profit for 2011 attributable to the law office "looked to me like it was low"; however, the record before us does not establish that petitioner inquired about this unusually low amount as a

_____

[2](...continued)
1181 (10th Cir. 2003).

[*11] reasonable person would.  Petitioner testified that she asked Mr. Canty about the low profit figure and that he assured her it was accurate, however, we do not find petitioner's testimony credible.  Throughout the proceedings, petitioner has provided inconsistent and evolving explanations regarding her review of the 2010 and 2011 tax returns.  In her Form 8857 petitioner states that Mr. Canty "prepared the returns and filed electronically without * * * [petitioner] seeing or reviewing the return."  In the typewritten attachment to the Form 8857 petitioner similarly states that Mr. Canty "prepared the returns and filed them electronically without * * * [petitioner] having reviewed them."  Petitioner stipulated that she did not ask to review the returns for 2010 and 2011 before they were filed.  In her petition, petitioner states that Mr. Canty "presented * * * [the returns] to * * * [her] for signature" and she "asked him specifically if the return was accurate."  At trial petitioner testified that she took a "brief look" at the tax returns but did not "study or review any other pages."  During cross-examination petitioner testified that she reviewed more than the first page of the Forms 1040 but "did not study the numbers that were there to determine whether those numbers were accurate or how those numbers were calculated."  On the basis of petitioner's inconsistent and vague testimony we are not persuaded that she reviewed the tax returns or inquired as a reasonable person would do.  Section 6015(b)(1)(C) "was not designed to

**[*12]** protect willful blindness or to encourage the deliberate cultivation of ignorance." Doyel v. Commissioner, T.C. Memo. 2004-35, 2004 Tax Ct. Memo LEXIS 35, at *29 (quoting Friedman v. Commissioner, 53 F.3d 523, 525 (2d Cir. 1995), aff'g in part, rev'g in part, and remanding T.C. Memo. 1993-549). Accordingly, we hold that petitioner has failed to prove that she did not know or have reason to know about the understatements. Petitioner has therefore failed to satisfy the requirements of section 6015(b)(1)(C).

Section 6015(b)(1)(D) provides that in order for a requesting spouse to obtain relief, it must be inequitable to hold her liable for the deficiency in tax attributable to such understatement. "All of the facts and circumstances are considered in determining whether it is inequitable to hold a requesting spouse jointly and severally liable for an understatement." Sec. 1.6015-2(d), Income Tax Regs. The regulation specifies that some of the relevant factors are: (1) whether the requesting spouse significantly benefited, directly or indirectly, from the understatement; (2) whether the requesting spouse has been deserted by the nonrequesting spouse; and (3) whether the spouses have been divorced or separated. Id.

Section 1.6015-2(d), Income Tax Regs., provides that a relevant factor in this determination is whether the requesting spouse significantly benefited,

[*13] directly or indirectly, from the understatement. Normal support is not considered a significant benefit. See Flynn v. Commissioner, 93 T.C. 355, 367 (1989). The record does not indicate whether petitioner significantly benefited from the understatements.

We may consider whether the requesting spouse was deserted, divorced, or separated from the nonrequesting spouse. See Alt v. Commissioner, 119 T.C. at 315; sec. 1.6015-2(d), Income Tax Regs. Petitioner is still married to Mr. Canty, and they still live together in Maryland.

The Court has also held that a material factor is whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the nonrequesting spouse. See Alt v. Commissioner, 119 T.C. at 314 (citing Jonson v. Commissioner, 118 T.C. 106, 119 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003)). Nothing in the record indicates that Mr. Canty hid or concealed financial or tax information from petitioner, and therefore we find that Mr. Canty did not hide or conceal from her any information relating to their income tax returns for the taxable years 2010 and 2011.

Petitioner bears the burden of establishing that it is inequitable to hold her liable for the deficiencies in tax attributable to the understatements. See Rule

**[\*14]** 142(a); <u>Flynn v. Commissioner</u>, 93 T.C. at 359. Petitioner has failed to meet her burden. We find that under section 6015(b)(1)(D) it is not inequitable to hold petitioner liable for the deficiencies in tax for 2010 and 2011. Since petitioner failed to satisfy the requirements of section 6015(b)(1)(C) and (D), she does not qualify for relief under section 6015(b)(1).[3] <u>See</u> <u>Alt v. Commissioner</u>, 119 T.C. at 313.

## II. Section 6015(f)

Section 6015(f) allows for an alternative means of relief for a requesting spouse who does not otherwise qualify for relief under section 6015. Pursuant to section 6015(f), the Commissioner is authorized to grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

### A. Threshold Conditions

A requesting spouse must satisfy seven threshold conditions before a request under section 6015(f) will be considered. <u>See</u> Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403, <u>modifying and superceding</u> Rev. Proc. 2003-61,

---

[3]Accordingly, we need not discuss whether petitioner satisfies the requirements of sec. 6015(b)(1)(B).

**[\*15]** 2003-2 C.B. 296. Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400, sets forth the following threshold conditions: (1) the requesting spouse filed a joint return for the year in which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain exceptions, the income tax liability from which the requesting spouse seeks relief is attributable, either in full or in part, to an item of the nonrequesting spouse. Respondent concedes that petitioner meets all seven threshold requirements.

## B. Streamlined Relief

When, as here, the seven threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination for relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is no longer married to the nonrequesting spouse on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) on the date the joint return was filed, the requesting spouse did not know or have reason to know that there was an understatement or

**[\*16]** deficiency.  Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.  Petitioner does not qualify for a streamlined determination because she was married to Mr. Canty when the IRS made its final determination.

C.  Facts and Circumstances

Where a requesting spouse meets the threshold conditions but fails to qualify for a streamlined determination, she may still be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold her liable for the deficiency.  See id. sec. 4.03.  The guidelines list the following nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief:  (1) marital status; (2) economic hardship; (3) in the case of an understatement, knowledge or reason to know of the items giving rise to the understatement or deficiency; (4) legal obligation; (5) significant benefit; (6) compliance with income tax laws; and (7) mental or physical health.  Id.  In making our determination under section 6015(f), we consider these factors as well as any other relevant factors.  No single factor is determinative, and all factors shall be considered and weighed appropriately.  See Pullins v. Commissioner, 136 T.C. 432, 448 (2011); Molinet v. Commissioner, T.C. Memo. 2014-109, at \*10.

[*17] The first factor is whether the requesting spouse is separated or divorced from the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.03(2)(a). Petitioner is still married to and living with Mr. Canty. Accordingly, this factor is neutral.

The second factor is whether the requesting spouse will suffer economic hardship if relief is not granted. Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. A requesting spouse suffers economic hardship if the satisfaction of the tax liability, in whole or in part, would cause her to be unable to pay reasonable basic living expenses. Id. In her Form 8857 petitioner reported monthly household income of $13,208.08 and monthly household expenses of $10,113.87. We cannot find that petitioner would suffer economic hardship if we deny her relief. Accordingly, this factor is neutral.

The third factor is whether the requesting spouse knew or had reason to know of the items giving rise to the understatement as of the date the joint return was filed. Id. sec. 4.03(2)(c)(i)(A). We found above that, under section 6015(c)(1)(C), petitioner failed to prove that she had no reason to know of the understatements. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402, provides that the facts and circumstances that are considered in determining whether the requesting spouse had reason to know of an understatement include: (1) the requesting spouse's level of education; (2) any deceit or evasiveness by the

[*18] nonrequesting spouse; (3) the requesting spouse's degree of involvement in the activity generating the income tax liability; (4) the requesting spouse's involvement in business or household financial matters; (5) the requesting spouse's business or financial expertise; and (6) lavish or unusual expenditures compared with past spending levels.

Petitioner has a bachelor's degree in economics and a master's degree in business and public administration. No evidence was presented that Mr. Canty was deceitful or hid any information from petitioner in regard to the tax returns. Although petitioner was not involved with the law office, she had the opportunity to question Mr. Canty regarding the items reported on the Schedules C but chose not to do so. Petitioner is a financial management analyst, and she testified that she "take[s] care of most of the household expenses." We find that petitioner failed to prove that she did not know and had no reason to know of the understatements. Accordingly, this factor weighs against relief.

The fourth factor is whether the requesting spouse or the nonrequesting spouse has a legal obligation to pay the outstanding Federal income tax liability. Id. sec. 4.03(2)(d). This factor will be neutral if the spouses are not separated or divorced. Id. Accordingly, this factor is neutral.

**[\*19]** The fifth factor is whether the requesting spouse significantly benefited from the understatement. Id. sec. 4.03(2)(e). We have not found that petitioner significantly benefited from the understatements. Petitioner provided no testimony or other evidence that the family vacations and vehicle purchase benefited her or to what extent. This factor is neutral.

The sixth factor considers whether the requesting spouse has made a good-faith effort to comply with the income tax laws in the taxable years following the years for which relief is requested. Rev. Proc. 2013-34, sec. 4.03(2)(f), 2013-43 I.R.B. at 402-403. Petitioner filed her 2012 income tax return more than a year late and did not timely pay her 2012 income tax liability. Accordingly, this factor weighs against granting relief.

The seventh factor is whether the requesting spouse was in poor physical or mental health. Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403. This factor will weigh in favor of relief if the requesting spouse was in poor physical or mental health at the time the returns to which the request for relief pertains were filed or at the time the requesting spouse requested relief. Id. This factor is neutral if the requesting spouse was in neither poor physical nor poor mental health. Id. Petitioner stipulates that she had no physical or mental health problems at the time she signed the 2010 and 2011 tax returns. Petitioner did not offer any testimony or

**[*20]** other evidence regarding her physical or mental health at the time she requested innocent spouse relief. Accordingly, this factor is neutral.

On the basis of the foregoing facts and circumstances, we find that it would not be inequitable to deny petitioner relief under section 6015(f).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.