T.C. Memo. 2020-134

UNITED STATES TAX COURT

BEVERLY ROBINSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12498-16.                    Filed September 23, 2020.

<u>James R. Monroe</u>, for petitioner.

<u>Miriam C. Dillard</u> and <u>Mark J. Tober</u>, for respondent.

[*2]     MEMORANDUM FINDINGS OF FACT AND OPINION[1]

COPELAND, <u>Judge</u>:  Petitioner, Beverly Robinson, seeks equitable relief from joint and several liability (innocent spouse relief) associated with a joint return for 2010.  For the reasons explained herein, we conclude that she is entitled to relief.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.[2]  When petitioner filed her petition, she resided in Florida.

---

[1]This case was tried before Judge Carolyn P. Chiechi on February 6, 2018. As ordered by the Court, the parties filed their opening briefs by April 9, 2018, and answering briefs by May 22, 2018.  Judge Chiechi retired on October 19, 2018.  By order dated October 25, 2018, we informed the parties of Judge Chiechi's retirement and proposed reassigning this case to another judicial officer of the Court for purposes of preparing the opinion and entering the decision on the basis of the trial record, or, alternatively, allowing the parties to request a new trial.  On November 13, 2018, the parties consented to the reassignment of this case.  By order dated February 8, 2019, this case was assigned to Judge Elizabeth A. Copeland for disposition.

[2]At trial Exhibit 57-P, petitioner's 2014 return, was conditionally admitted on the basis of respondent's authenticity objection.  The objection was abandoned on brief.  Accordingly, Exhibit 57-P is admitted into evidence.

**[\*3]** Petitioner seeks review of the Internal Revenue Service's (IRS) denial of innocent spouse relief under section 6015(f).[3] The joint return filed with her former husband for the 2010 tax year at issue reflects a tax liability that was reported but not paid with the return. Petitioner submitted Form 8857, Request for Innocent Spouse Relief, which the IRS received on May 13, 2015. That request began an administrative review under section 6015. Respondent denied the request in a final determination, and petitioner timely filed a petition for review by this Court pursuant to section 6015(e). Her former spouse did not intervene in this case. See sec. 6015(e)(4); Rule 325; see also Van Arsdalen v. Commissioner, 123 T.C. 135, 138 (2004). He testified at trial pursuant to a subpoena.

I.    Background

Petitioner married Shelly Robinson (collectively, Robinsons) on November 25, 1998; the Robinsons divorced on May 1, 2014.

Petitioner's highest level of education is high school. She worked at Georgia-Pacific Wood Products, LLC, in Ocala, Florida, from 1998 to 2007. She also worked for her former spouse's business from 1999 through at least 2009.

---

[3]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts have been rounded to the nearest dollar.

[*4] Petitioner worked at Georgia Pacific Consumer Operations (Georgia Pacific II) in Palatka, Florida, as a machine operator from 2011 through the time of trial. She earned $21 per hour and roughly $3,000 per month. Petitioner has no financial expertise. At all relevant times she lived in the marital home in Florida.

Mr. Robinson earned a general equivalency diploma (commonly known as a GED). At all relevant times Mr. Robinson earned income by providing lawn care services.

### A. Robinson Lawn Care

In 1999 Mr. Robinson started a lawn care service sole proprietorship known as Robinson Lawn Care. He alongside workers he contracted with provided all the services for the business, which consisted of cutting grass, making flower beds, trimming, and pruning trees. He also maintained control over the business checking account. The business mainly serviced commercial customers with roughly only 10% of the gross income derived from residential customers. On all returns in the record the income earned from commercial customers was reported, but the cash paid by residential customers was not.

When petitioner helped with the business, her primary duty was invoice billing, which involved printing invoices with the name of the customer and the amount due. She was also listed on the business checking account, but she did not

[*5] write checks. While she was involved with the business, Mr. Robinson gave the tax information associated with Robinson Lawn Care to her. She summarized and provided that tax information to their tax return preparer, Terry Beyer.

In December 1999 petitioner registered the name Robinson Lawn Care, a fictitious name, with the Florida Department of State, Division of Corporations (Florida Department of State). At that time only petitioner was available during the Florida Department of State's office hours because Mr. Robinson was working a day shift. Because the Florida Department of State required Mr. Robinson's identification to list him as the registered owner and petitioner did not have it, she listed herself as the registered owner. In December 2004 and 2009 she renewed the fictitious name filing in accordance with Florida State law requirements. Fla. Stat. sec. 865.09(3) and (4) (2001). Petitioner did not file or sign anything with the State of Florida related to Robinson Lawn Care after 2009.

B.    The Robinsons' 2007, 2008, and 2009 Tax Years

For tax years 2007, 2008, and 2009 the Robinsons filed joint Federal income tax returns. The Robinsons' wage and income transcripts show that for 2007 and 2008 petitioner was issued most of the Forms 1099-MISC, Miscellaneous Income, for the income associated with Robinson Lawn Care including income from their largest customer, Wal-Mart Stores, Inc. (Wal-Mart).

**[\*6]** The 2009 transcript shows that petitioner received the only Form 1099-MISC issued for income associated with Robinson Lawn Care, which was from Wal-Mart.

## II.     Marital Difficulties and Extramarital Affair

In 2010 the Robinsons started experiencing marital difficulties, because of Mr. Robinson's infidelity among other factors.[4]  Petitioner vividly remembered her former husband's moving out because they had a "very bad" fight after a church revival held a few days before Valentine's Day.  Thereafter, Mr. Robinson incurred roughly $800 per month in hotel costs in 2010.

Throughout 2010 petitioner continued to care for Mr. Robinson's son in the marital home.  She relied on her father to pay her mortgage and funds from Mr. Robinson to feed his son and herself.

## III.     The Unpaid 2010 Tax Liability

The Robinsons timely filed their joint return for the 2010 tax year in April 2011.  The return reported $162,803 of adjusted gross income, and after credits, they owed $43,361 in tax.  The 2010 tax was not paid with the return.  The only

---

[4]In 2012 Mr. Robinson fathered a child with an "associate."  The pregnancy likely began in 2011.  Mr. Robinson began paying child support to the mother of the child in 2013.

**[*7]** source of income reported on the 2010 return was income associated with Robinson Lawn Care.

The Schedule C, Profit or Loss From Business, attached to their 2010 return listed Mr. Robinson as the sole proprietor of Robinson Lawn Care. The Schedule C reported $303,632 in gross receipts, $131,908 in expenses, and $171,724 in net profit.

In a significant change from prior years, Mr. Robinson was issued the Forms 1099-MISC associated with Robinson Lawn Care for tax year 2010. His wage and income transcript for 2010 shows he was issued Forms 1099-MISC from commercial customers for $303,632 for income associated with Robinson Lawn Care, most of which was earned from services provided to Wal-Mart. Petitioner did not receive any Forms W-2, Wage and Tax Statement, or Forms 1099-MISC for 2010. Accordingly, the 2010 tax liability was solely attributable to income reported under Mr. Robinson's Social Security number.

As in prior tax years Mr. Beyer prepared the Robinsons' return for 2010, which was signed by Mr. Robinson and petitioner. However, petitioner did not review the 2010 return before signing it; she did not know she could file a separate return. Mr. Beyer did not inform petitioner that she could file separately.

**[*8]**   On or about October 19, 2011, petitioner told the IRS that the Robinsons were unable to pay the full balance due for 2010 and inquired about collection options and innocent spouse relief.  No amount was paid toward the liability following her inquiry.

In late 2011 Mr. Robinson was unable to obtain credit in his name to purchase a truck.  Because Mr. Robinson needed the truck to provide lawn care services and earn a living, petitioner agreed to put the truck in her name.  In exchange Mr. Robinson promised to help pay her bills.  He did not fulfill his promise.

IV.   Tax Year 2011

For 2011 the Robinsons timely filed a joint return.  An attached Schedule C listed Mr. Robinson as the proprietor of Robinson Lawn Care.  The Schedule C reported $234,818 of gross income and $227,839 of expenses for a net profit of $6,979.

Mr. Robinson's wage and income transcript for 2011 shows that all the Forms 1099-MISC were issued to him from commercial customers in the total amount of $234,817.  Those forms relate to income earned through the name Robinson Lawn Care, most of which was for services provided to Wal-Mart.

[*9]   Petitioner was only issued a Form W-2 for her employment at Georgia Pacific II in 2011; she was not issued any Forms 1099-MISC.

For the 2011 tax year the Robinsons reported $14,760 in adjusted gross income and $857 in total tax.  After applying the withholding from petitioner's wages and other credits, they overpaid their 2011 tax.  In May 2012 the IRS sent a notice to the Robinsons' marital home indicating that their 2011 overpayment was applied against their outstanding 2010 tax liability.

V.   Collection Action on the Unpaid 2010 Tax Liability

In May 2012 the IRS sent to the Robinsons' marital home a Notice of Intent to Levy and Your Right to Hearing (notice of intent to levy) with respect to the 2010 tax year.  In June 2012 petitioner requested and was granted an installment agreement for the 2010 tax liability for $1,000 per month.  From October 2012 to August 2013 the Robinsons submitted 10 check payments under the installment agreement, but 2 were returned for insufficient funds.  The IRS sent notices to the marital home notifying them of the penalties for late payment and that their payments under the installment agreement were returned.  By November 2013 the Robinsons were no longer in installment agreement status.

**[*10]** VI.   Tax Year 2012

In 2013 the Robinsons filed a joint return for 2012.  They reported $46,963 of adjusted gross income and $1,293 of tax due.  After applying the withholding from petitioner's Georgia Pacific II wages, the Robinsons overpaid their tax.  That overpayment was applied against the 2010 tax liability.

Mr. Robinson's wage and income transcript for 2012 shows he was issued Forms 1099-MISC from commercial customers Magnolias at Ocala Homeowner Association and Wal-Mart for $73,358 and $120,697, respectively, for income associated with Robinson Lawn Care.  Petitioner was issued a Form W-2 from Georgia Pacific II; she was not issued any Forms 1099-MISC for 2012.

VII.   Petitioner's Résumé

In 2013 petitioner sought new employment and uploaded her résumé to Beyond.com.  Her résumé stated that she worked at Georgia Pacific II as a production machine operator from June 2011 through August 2013 and Robinson Lawn Care from January 1999 through August 2013.  As to Robinson Lawn Care, petitioner embellished the length of her employment, namely the 2013 end date, on her résumé to obtain a new position.  She included additional information in her résumé under the Robinson Lawn Care heading, which provided that it was a "[c]urrent, full time job for family business;" and she listed her duties as

[*11] "Scheduling, Invoice Billing, Collections, Contract Writing, [and] Phone soliciting."

VIII. Divorce Proceedings

After the period of separation beginning in 2010, in June 2013 Mr. Robinson forced his way back into the marital home. Petitioner attempted to have him evicted by the police but was told that because they were not divorced Mr. Robinson could return. He permanently moved out of the marital home on July 10, 2013. On October 10, 2013, petitioner filed a petition for dissolution of marriage in the Marion County, Florida, Circuit Court (circuit court).

In March 2014 the Robinsons entered into a Marital Settlement Agreement for Dissolution of Marriage with Property but No Dependent or Minor Child(ren) (settlement agreement), which specifies the Robinsons' division of their assets and liabilities. Petitioner filled out the financial information for the settlement agreement. For assets and liabilities in his control, Mr. Robinson did not provide any financial information such as bank statements or invoices to arrive at the values listed in the settlement agreement.

Pursuant to the settlement agreement petitioner received $74,000 in total assets and assumed $93,300 in total liabilities. Mr. Robinson received $206,000 of total assets including trucks and equipment used to provide lawn care services

[*12] and $214,000 of total liabilities including the 2010 tax liability. There was no spousal support (i.e., alimony) awarded. Petitioner agreed to waive spousal support and any rights to the business assets in exchange for Mr. Robinson's assumption of the 2010 tax liability. Petitioner did not receive a significant benefit from the nonpayment of the 2010 tax. Neither Mr. Robinson nor petitioner was represented by an attorney or consulted an appraiser to value the marital assets and liabilities. The Robinsons each signed the settlement agreement.

On May 1, 2014, the Robinsons divorced and the settlement agreement was accepted by the circuit court.

IX.    Tax Year 2013

In 2014 Mr. Robinson filed his 2013 return and attached a Schedule C listing himself as the proprietor of Robinson Lawn Care.

Petitioner also filed a 2013 return in 2014 using a "single" filing status. Petitioner reported adjusted gross income of $19,897 from the wages she earned at Georgia Pacific II. She did not attach a Schedule C to her 2013 return, nor was she issued any Forms 1099-MISC for 2013.

[*13] For 2013 she reported $681 of total tax due.[5]  After applying the withholding from her wages, petitioner reported an overpayment.  The IRS applied petitioner's reported overpayment against the 2010 outstanding tax liability and sent notice of the same on May 26, 2014.

X.    Petitioner's Motion for Civil Contempt

On February 23, 2015, petitioner filed a Motion for Civil Contempt/Enforcement with the circuit court because Mr. Robinson failed to pay the IRS debt he had assumed.[6]  See supra pp. 11-12.  Mr. Robinson did not pay the 2010 tax liability because his accountant informed him that the debt was considered to be a joint and several liability for Federal income tax purposes.  On June 26, 2015, the circuit court granted petitioner's motion, finding that payment of the 2010 tax liability was Mr. Robinson's sole responsibility and ordered that he reimburse her for the overpayment from her 2013 tax year that the IRS applied against the 2010 tax liability.

---

[5]Later, on or about December 7, 2015, the IRS determined additional tax of $980 for unreported income petitioner received in 2013.  This amount was unpaid until January 2018, roughly three weeks before trial in this case.

[6]The motion was also based on Mr. Robinson's failure to refinance a truck awarded to him in the divorce, but that issue had been resolved when the motion was heard on June 2, 2015.

**[\*14]** XI.　Petitioner's Request for Innocent Spouse Relief

Petitioner sent the IRS Form 8857 dated April 20, 2015, seeking relief for 2010, which the IRS received on May 13, 2015.  Petitioner included the following on her Form 8857:

- she had separated and was living apart from Mr. Robinson since July 10, 2013;

- she had not been abused;

- when she signed the return, she did not know tax was owed for 2010 because she did not know how to read the return;

- she knew Mr. Robinson had self-employment income in 2010;

- she did not handle the money for the household;

- she had joint accounts with Mr. Robinson but had limited use of them, and she indicated that "because I was not working at the time I was only given money from my exhusband for household needs and was definately [sic] not allowed to obtain money from what he said was 'his' account because I was not contributing money to the checking account;" and

- she was not involved in preparing and did not review the 2010 return before it was filed; she also explained:  "I really didn't understand the return I just did what I thought I was suppose [sic] to do which was file a joint return with my then husband and file a yearly return."

Finally, petitioner indicated that it would be unfair to hold her liable for the 2010 income tax liability because:

**[*15]** I have filed a civil suit against Shelly Robinson regarding this debt owed to the IRS because in the divorce agreement Mr. Robinson signed on his side of the assets that he would be responsible for the IRS debt and he has not paid one dime towards the debt. My 2013 income tax refund of $1,044.00 was applied towards the debt owed to the IRS and it is now time for me to file my 2014 tax return and if I have any amount due to me that amount will be applied to the debt too and it is not fair because Mr. Robinson has a lucritive [sic] business which he makes over $100,000 per year. I don't make enough money to even pay my monthly bills. * * *

On May 3, 2016, the IRS Appeals Office issued a final determination letter denying petitioner's request for relief under section 6015(f) for tax year 2010.

## XII.  Mr. Robinson's 2014 Return and Fictitious Name Filing

In 2015 the Robinsons were no longer married. Mr. Robinson attached a Schedule C to his 2014 return which listed him as the proprietor of Robinson Lawn Care and reported a loss.

Petitioner's fictitious name filing expired by law on December 31, 2014. On March 3, 2015, Mr. Robinson filed a fictitious name registration under the name Shelly Robinson Lawn Care with the Florida Department of State. The fictitious name remains active.

**[\*16]** XIII.  Mr. Robinson's 2015 and 2016 Returns

Mr. Robinson filed 2015 and 2016 returns and attached Schedules C listing him as the sole proprietor of "Robinson Lawn Care"[7] and reporting a net profit for each year.

XIV.  Petitioner's 2014, 2015, and 2016 Returns

Petitioner did not comply with Federal income tax laws for tax years 2014 through 2016.  She did not timely file her 2014 return or pay the tax due. Petitioner timely filed her returns for taxable years 2015 and 2016, but the tax due was not paid with the returns.  In December 2018, three weeks before the trial in this case, petitioner filed her 2014 return and paid her outstanding tax liabilities except for the amount due for the 2010--the year at issue for which she requests section 6015 relief.

XV.  Mr. Robinson's Installment Agreement for 2010

In April 2017 Mr. Robinson established an installment agreement with the IRS to pay $500 per month in satisfaction of the 2010 tax liability.  At the time of

---

[7]Although Mr. Robinson's Schedules C for 2015 and 2016 list Robinson Lawn Care as the business name for his proprietorship, we note that in those tax years the fictitious name filing for "Robinson Lawn Care" had expired and that the fictitious name "Shelly Robinson Lawn Care" was active.

**[*17]** trial Mr. Robinson was timely paying under the installment agreement and $33,428, without interest, remained due.

XVI. <u>Mr. Robinson's Failure To Comply With Subpoena</u>

Mr. Robinson was subpoenaed by petitioner's counsel to bring his banking and business financial records to the trial session. He was also instructed to bring documentation related to his current installment agreement with the IRS for the 2010 liability. He appeared at trial with no documents and no reasonable rationale for failing to comply with the subpoena.

OPINION

I. <u>Statutory Framework</u>

In general married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making that election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); <u>see</u> sec. 1.6013-4(b), Income Tax Regs. Subject to several conditions, an individual who has made a joint return with his or her spouse may seek relief from joint and several liability arising from that joint return. Section 6015 provides relief from joint liability for spouses who meet the conditions of subsection (b) and for divorced and separated persons under subsection (c); and it provides relief in subsection (f) when relief provided in subsections (b) and (c) is unavailable. If the

[*18] disputed tax liability involves nonpayment of tax shown on a joint return, the only relief available is under section 6015(f), which is the case here. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003). When taxpayers request relief under section 6015(f), equitable relief from joint and several liability is appropriate if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)." Sec. 6015(f)(1).

Petitioner bears the burden of establishing that she is entitled to relief. See Rule 142(a). Our review of the IRS' determination is de novo. See Sutherland v. Commissioner, 155 T.C. __, __ (slip op. at 18) (Sept. 8, 2020);[8] Porter v. Commissioner, 132 T.C. 203, 210 (2009).

The Commissioner issued Rev. Proc. 2013-34, 2013-43 I.R.B. 397, which prescribes guidelines to determine whether a taxpayer qualifies for equitable relief from joint and several liability. This Court considers these guidelines in the light

---

[8]The petition in this case was filed and the trial was held before the enactment of sec. 6015(e)(7). Sec. 6015(e)(7) changed our scope of review from de novo to the administrative record, with limited exceptions. However, sec. 6015(e)(7) does not apply to petitions filed before enactment. Sutherland v. Commissioner, 155 T.C. __, __ (slip op. at 18) (Sept. 8, 2020). Thus, our standard and scope of review in this case remains de novo. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

**[\*19]** of the attendant facts and circumstances to decide whether equitable relief is appropriate under section 6015(f), but the Court is not bound by them. <u>Pullins v. Commissioner</u>, 136 T.C. 432, 438-439 (2011); <u>see also</u> <u>Johnson v. Commissioner</u>, T.C. Memo. 2014-240, at \*10.

Pursuant to Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. at 399-400, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to relief under section 6015(f). The requirements for relief under Rev. Proc. 2013-34, sec. 4, are characterized as threshold or mandatory requirements followed by either a streamlined determination or a weighing of equitable factors. A requesting spouse must satisfy each threshold requirement to be considered for relief. <u>See</u> Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399. If the requesting spouse meets the threshold requirements, the Commissioner will then grant equitable relief if he or she meets each streamline element. <u>See</u> <u>id.</u> sec. 4.02, 2013-43 I.R.B. at 400. If the requesting spouse is not entitled to streamlined relief but meets the threshold requirements, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors. <u>See</u> <u>id.</u> sec. 4.03(1), 2013-43 I.R.B. at 400.

**[\*20] II.** <u>Threshold Conditions</u>

The requesting spouse must meet seven threshold conditions to be considered for relief under section 6015(f). The parties do not dispute, and the Court finds, that the first six[9] threshold conditions have been met. However, respondent asserts that petitioner failed to satisfy the seventh threshold condition, which requires the income tax liability from which the requesting spouse seeks relief to be attributable, either in full or in part, to "an underpayment resulting from the nonrequesting spouse's income." Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399.

The year at issue is 2010, and because the underpayment in tax is from income associated with Robinson Lawn Care, the key to whether any of the income is attributable to petitioner is whether she was involved in the business in 2010. Although she had assisted with the lawn business in prior years, she was not involved in Robinson Lawn Care in 2010. Importantly, for the reasons set forth below, all of the income for the year at issue is attributable to Mr. Robinson.

---

[9]The first six threshold conditions are: (1) the requesting spouse filed a joint return for the year for which relief is sought; (2) relief is not available to the requesting spouse under sec. 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; and (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return. Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399.

[*21] First, all the tax filings list Mr. Robinson as the recipient of the income associated with Robinson Lawn Care for tax year 2010 (and subsequent tax years). The Schedules C attached to the 2010 return and subsequent returns included in the record[10] list Mr. Robinson as the sole proprietor of Robinson Lawn Care. Mr. Robinson was issued all the Forms 1099-MISC for the income associated with Robinson Lawn Care for tax year 2010 (and years thereafter) from third-party payors. This is notable because before 2010, when petitioner was involved in the business, nearly all Robinson Lawn Care customers issued Forms 1099-MISC in her name including their largest customer, Wal-Mart. The absence of any Forms W-2 and/or Forms 1099-MISC by third-party payors to petitioner for 2010 provides substantial support for her position that she was unemployed in 2010.

Second, it is clear that the Robinsons' marital difficulties began in 2010. Both petitioner and Mr. Robinson testified that she was no longer involved in Robinson Lawn Care after he moved out. The question is whether he moved out in 2010, which aligns with petitioner's account of the events. Petitioner credibly testified that Mr. Robinson moved out of the marital home in February 2010. She

[10]The subsequent years' tax returns also had Schedules C attached listing Mr. Robinson as the sole proprietor. The record includes tax returns for years 2010, 2011, and 2013 through 2016. For 2012 the record includes only an account transcript showing that the Robinsons filed a joint return, but it does not include a copy of that return.

**[\*22]** vividly remembered that they had a "very bad" fight after a church revival held a few days before Valentine's Day. Her testimony is corroborated by Mr. Robinson's $800 in monthly hotel costs while they were, according to him, "on and off" in 2010.

Mr. Robinson initially testified that he moved out in 2013 and that petitioner was involved in the business in 2010. But when pressed he admitted he was not sure when he moved out. Throughout the trial Mr. Robinson's testimony was relatively inconsistent, and we give it little value.

Petitioner's account is tied to specific events and dates and supported by the third-party payor information. See supra p. 21. Mr. Robinson "forced his way back" into the marital home in June 2013, and she attempted to evict him before he moved out on his own for a second time on July 10, 2013.[11] From this it is clear that Mr. Robinson initially moved out in February 2010, moved back in June 2013, and moved out permanently in July 2013.

Finally, despite respondent's arguments to the contrary, we find that petitioner's status as the registered owner of the fictitious name Robinson Lawn

---

[11]Although we acknowledge that in her Form 8857 petitioner indicates that she separated and was living apart from Mr. Robinson beginning July 10, 2013, we also note that the form includes only one line for a date. It is reasonable for petitioner to have included the last date he lived with her--July 2013.

[*23] Care[12] is not pertinent.  Although petitioner is listed as the registered owner of Robinson Lawn Care from December 1998 to December 2014, we find the reason for her filing the fictitious name--that her former husband worked during the day--is a sufficient explanation for why she is listed instead of Mr. Robinson. Moreover, she did not sign any State filings in 2010 or thereafter.  Rather, her signature last appeared on the renewal of fictitious name filed in 2009, when she was clearly still involved in the business.

Respondent argues that petitioner's résumé indicates that she worked at Robinson Lawn Care until 2013 and that her being a signatory on the checking account provides significant support that she was involved in the business in 2010. We disagree.

Petitioner embellished her résumé by listing both Georgia Pacific II and Robinson Lawn Care as current jobs in 2013 and described Robinson Lawn Care as a full-time family business.  It is highly unlikely that she worked two full-time jobs.  Indeed, the IRS' third-party reporting shows that petitioner received income from Georgia Pacific II in 2011 and the years that followed, but after tax year

---

[12]We note that there were two separate fictitious names filed with the Florida Department of State that used similar names.  Petitioner was the registered owner of the fictitious name "Robinson Lawn Care" until it expired by law in 2014, whereas Mr. Robinson was the registered owner of the fictitious name "Shelly Robinson Lawn Care" filed in 2015.

[*24] 2009 no Forms 1099-MISC were issued to her. Although we do not condone her inconsistency, we find it is merely puffery in an attempt to obtain new employment and of no significance here.

Similarly we find that petitioner's name on the business account is not persuasive support for respondent's position as Mr. Robinson had control of that account and she never wrote checks on it. See infra p. 28.

Thus, petitioner satisfies all seven threshold conditions, and therefore she may be entitled to section 6015(f) relief if she meets the criteria for either a streamlined determination or equitable relief.

III. Streamlined Determination Granting Relief

When the threshold conditions have been met, Rev. Proc. 2013-34, sec. 4.02, allows a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is no longer married to the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) the requesting spouse "did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint income tax return, as set forth in section 4.03(2)(c)(ii)." Petitioner concedes she is not entitled to a streamlined determination because she cannot prove that she will

[*25] suffer economic hardship if relief is not granted.  Therefore, she is not eligible for a streamlined determination.

IV.    Equitable Facts and Circumstances Test

Where a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, the requesting spouse may still be eligible for relief if it would be inequitable to hold him or her liable for the underpayment.  Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400, provides a list of the following nonexclusive factors:  (1) marital status; (2) economic hardship if relief is not granted; (3) in the case of an underpayment, knowledge or reason to know the tax liability would not or could not be paid; (4) legal obligation to pay the outstanding tax liability; (5) significant benefit derived from the unpaid tax liability; (6) compliance with income tax laws; and (7) mental or physical health.  If the requesting spouse was abused, certain factors may weigh in favor of relief when they otherwise would have weighed against relief.  Id. sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402.  The Court considers these factors as well as any other relevant factors.  Id. sec. 4.03(2).  That is, the factors are a nonexclusive list, no one factor is determinative, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and

[*26] circumstances." Id.; see Pullins v. Commissioner, 136 T.C. at 448; Molinet v. Commissioner, T.C. Memo. 2014-109, at *10.

Petitioner concedes and the record supports that the economic hardship and mental or physical health factors do not weigh in favor of relief. Thus, these factors are neutral. Rev. Proc. 2013-34, sec. 4.03(2)(b), (g).

We evaluate the remaining factors below.

A.    Marital Status

Petitioner is divorced from Mr. Robinson. See id. sec. 4.03(2)(a). Accordingly, this factor weighs in favor of relief.

B.    Knowledge or Reason To Know

In an underpayment case the knowledge factor considers whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at the time of filing the joint return. Id. sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. This factor favors relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the liability reported on the return or knew of the nonrequesting spouse's intent or ability to pay the tax liability. This factor weighs against relief if, on the basis of the facts and circumstances, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the reported tax liability.

[*27] Notwithstanding the requesting spouse's knowledge or beliefs, this factor favors relief if the nonrequesting spouse maintained control of the household finances by restricting the requesting spouse's access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning the payment of the liability. Id.

When determining whether the requesting spouse had reason to know that the nonrequesting spouse would not or could not pay the reported tax liability, we consider the following facts and circumstances: (1) the requesting spouse's level of education; (2) any deceit or evasiveness of the nonrequesting spouse; (3) the requesting spouse's degree of involvement in the activity generating the tax liability or the household or business finances; (4) the requesting spouse's business or financial expertise; and (5) the presence of lavish or unusual expenditures relative to the past spending levels. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii).

The operative date in determining petitioner's knowledge or reason to know is April 2011, when she signed the 2010 return. See id. sec. 4.03(2)(c)(ii).

### 1. Financial Control and Negated Knowledge

Generally a taxpayer who signs a return is charged with constructive knowledge of its contents. Porter v. Commissioner, 132 T.C. at 211; see also

[*28] <u>Stevens v. Commissioner</u>, 872 F.2d 1499, 1506-1507 (11th Cir. 1989), <u>aff'g</u> T.C. Memo. 1988-63. However knowledge is negated where the nonrequesting spouse restricted the requesting spouse's access to financial information such that the requesting spouse was unable to question the payment of tax reported as due on the return. Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii); <u>see, e.g.</u>, <u>Neitzer v. Commissioner</u>, T.C. Memo. 2018-156, at *17-*19. Even though she testified and stated in her Form 8857 that she did not review the 2010 return, petitioner is charged with knowledge of the tax liability reported. What we know is that petitioner was not involved in the business in 2010 and was not involved in preparing the return. Mr. Robinson controlled the business account. Although she was listed on the joint business account with him, she did not write checks on it. Furthermore, Mr. Robinson failed to comply with the subpoena by not providing any banking or business financial records. Therefore, the Court does not know whether this joint business account reflects all his business activities. Mr. Robinson admitted that he received cash from the business that he did not report. Because the Robinsons had been living separately since 2010 and petitioner was not involved in the business, even if she looked at the account statements, petitioner would have no way to know whether Mr. Robinson was hiding any cash payments.

**[\*29]** Finally, petitioner effectively received an allowance from Mr. Robinson for household needs, and as explained in her Form 8857 she "was definately [sic] not allowed to obtain money from what he said was 'his' account because * * * [she] was not contributing money to the checking account." This arrangement is further evidenced by the fact that Mr. Robinson allotted her money to feed herself and his son when she was unemployed in 2010 and Mr. Robinson was living in a hotel for most of the year.

In sum, petitioner did not earn income in 2010, and Mr. Robinson restricted her access to household funds; the 2010 tax liability derived from income earned by Mr. Robinson from his business, and he (not petitioner) controlled those funds.[13]  Accordingly, petitioner's deemed knowledge is negated by Mr. Robinson's financial control, including restriction of her access to their finances, such that petitioner was prevented from questioning the payment of tax reported as due on their 2010 return.  See Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii).

2.     Whether the Unpaid Tax Would Not or Could Not Be Paid

Even if petitioner is charged with constructive knowledge of the 2010 tax liability, she had no reason to know that Mr. Robinson would not or could not pay

---

[13]See supra p. 28 (petitioner did not write checks out of business account, cash payments were paid to Mr. Robinson, and the record lacks financial information).

[*30] it.  See, e.g., Washington v. Commissioner, 120 T.C. at 150-151; Neitzer v. Commissioner, at *19-*20.  Petitioner is a high school graduate with no financial expertise.  And she was no longer involved in the business in 2010.  See Neitzer v. Commissioner, at *19.

Moreover, her constructive knowledge of the return includes the net profit of $171,724 (i.e., after expenses) reported from Robinson Lawn Care in 2010.  In Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), aff'g T.C. Memo. 1992-228, the court explained that the taxpayer had knowledge of large deductions because "even a cursory glance at the return would have brought the deductions to her attention."  Like the taxpayer in Hayman, petitioner would have seen the large net profit even at a cursory glance and likewise could reasonably expect that Mr. Robinson would pay the tax due.  See id.  Similarly, there is no evidence of lavish expenditures when she signed the return in 2011.  Accordingly, the net profit reported on the 2010 return associated with Robinson Lawn Care would have been sufficient to pay the tax due.

Further, we note that when petitioner signed the 2010 return in 2011, her personal life was in disarray.  It is clear from the record that the Robinsons no longer had an open line of communication in 2011.  In addition to Mr. Robinson's infidelities the Robinsons no longer worked or lived together in 2011 as they had

[*31] for over a decade.  Accordingly, petitioner's separation from Mr. Robinson and lack of involvement in the business show that even with constructive knowledge of the unpaid tax liability, she did not know or have reason to know that the tax would not be paid.  See Neitzer v. Commissioner, at *19-*20.  Therefore, this factor favors relief.

C.     Legal Obligation

For purposes of this factor a legal obligation is an obligation arising from a divorce decree or other legally binding agreement.  Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402.  Generally, this factor favors relief where the nonrequesting spouse has the sole legal obligation for the liability and weighs against relief where the requesting spouse has the sole legal obligation.  Id.  This factor is neutral, however, if at the time the requesting spouse entered into the divorce decree or agreement, the requesting spouse knew or had reason to know that the nonrequesting spouse would likely not pay the income tax liability.  Id.

The March 2014 settlement agreement provides that Mr. Robinson assumed the 2010 tax liability.  However, his willingness to do so does not end our inquiry.  We must also explore whether petitioner knew or had reason to know that Mr. Robinson would not pay the liability when she signed the settlement agreement in March 2014.  This is distinct from the knowledge factor discussed supra

**[*32]** pp. 26-31, where we evaluated her knowledge in 2011. For the reasons stated below, this factor is troublesome.

In March 2014 petitioner knew that Mr. Robinson had not paid the 2010 tax liability for almost three years. Indeed, in October 2011 petitioner asked the IRS about innocent spouse relief and indicated that the Robinsons could not pay the 2010 tax liability. In 2012 the Robinsons' overpayment for tax year 2011 was applied against the 2010 tax liability, which was reflected in an IRS notice sent in May 2012.

Also in 2012 the IRS issued a notice of intent to levy with respect to the 2010 tax year to petitioner. Petitioner contacted the IRS one month later to request an installment agreement to pay the 2010 tax liability, which the IRS granted. From 2012 through 2013 two of the ten check payments made under the installment agreement were returned for insufficient funds, and notices reflecting the same were mailed to the marital home, where petitioner lived. By November 2013 the Robinsons were no longer in installment agreement status. Similarly in 2013 petitioner was notified that the overpayment reported on the Robinsons' 2012 joint return was applied against the 2010 tax liability.

Additionally petitioner was generally aware that Mr. Robinson had bad credit. In late 2011 petitioner put a truck in her name at Mr. Robinson's request

[*33] because he was unable to obtain credit in his name. And although he promised her that in exchange he would help pay her bills, he did not.

The above facts create doubt about Mr. Robinson's willingness to pay the assumed tax liability when the divorce became final and he assumed the 2010 liability at issue. Accordingly, when she entered into the March 2014 settlement agreement, petitioner had reason to know that Mr. Robinson might not pay the liability he had assumed. Thus, this factor is neutral despite Mr. Robinson's legal obligation to pay the entire 2010 tax liability.

D.      Significant Benefit

This factor weighs against relief if the requesting spouse significantly benefited in excess of normal support from the unpaid tax liability. Rev. Proc. 2013-34, sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular parties. Estate of Krock v. Commissioner, 93 T.C. 672, 678-679 (1989). Evidence that the requesting spouse enjoyed a lavish lifestyle weighs against relief. Rev Proc. 2013-34, sec. 4.03(2)(e). Both parties agree and the Court finds that petitioner did not benefit beyond normal support and did not enjoy a lavish lifestyle.

This Court treats lack of significant benefit as a factor favoring relief. See, e.g., Boyle v. Commissioner, T.C. Memo. 2016-87, at *16; Wang v.

[*34] Commissioner, T.C. Memo. 2014-206, at *40.[14] Petitioner did not significantly benefit from the nonpayment of the tax. But Mr. Robinson did. The business income was under Mr. Robinson's control in 2010 as evidenced, for example, by the fact that he sent petitioner money to feed his son in 2010 while she was unemployed. The tax liability here was not small, and Mr. Robinson received a significant benefit from its nonpayment as he testified that he used the money for Robinson Lawn Care. Similarly he received business assets and did not pay alimony in exchange for his assumption of the 2010 tax liability. We further note that Mr. Robinson's Social Security number was used to report the self-employment income earned from Robinson Lawn Care in 2010, which means he earned the Social Security credits associated with that income. See 42 U.S.C. secs. 411 and 412 (2006). Therefore, this factor favors relief.

E.    Compliance With Federal Income Tax Laws

This factor considers whether the requesting spouse was in compliance with the Federal income tax laws. If the requesting spouse complied with the Federal income tax laws for taxable years after being divorced from the nonrequesting spouse, this factor weighs in favor of relief. Rev. Proc. 2013-34, sec. 4.03(2)(f)(i).

---

[14]This is so despite Rev. Proc. 2013-34, sec. 4.03(2)(e), treating lack of significant benefit as a neutral factor.

**[\*35]** If the requesting spouse did not comply, this factor weighs against relief. Id. Notwithstanding the requesting spouse's noncompliance, if he or she has made a good faith effort to comply in the taxable years following the year for which relief is sought, then this factor is neutral. Id.

Petitioner has not been in compliance with her obligation to file returns and pay income tax for all tax years since 2014, the year of the Robinsons' divorce. Petitioner filed her 2014 return almost three years late and untimely paid her 2014, 2015, and 2016 income tax liabilities. See Canty v. Commissioner, T.C. Memo. 2016-169, at \*7, \*19 (weighing the compliance factor against relief when taxpayer was not compliant with one of the three years following the year at issue by filing a return late and untimely paying the tax due).

Petitioner also failed to make a good faith effort to comply with the Federal income tax laws. In her Form 8857 signed days after her 2014 return was due, petitioner indicated that she knew she had an obligation to file a tax return; nevertheless she believed that it would be unfair if an overpayment from her 2014 tax year was applied against the 2010 tax liability. From this it is clear that petitioner intentionally failed to timely file her 2014 return and therefore did not make a good faith effort to comply. Accordingly, this factor weighs against granting relief.

**[\*36]** F.     <u>Abuse</u>

This factor considers whether certain factors that otherwise would weigh against relief instead weigh in favor of relief because of abuse by the nonrequesting spouse.  Rev. Proc. 2013-34, sec. 4.03(2)(c)(iv).  If the taxpayer does not prove abuse, this factor is neutral.  <u>See, e.g.</u>, <u>Sleeth v. Commissioner</u>, T.C. Memo. 2019-138, at \*10.  The Court does not treat such serious allegations lightly, but neither will we accept a taxpayer's uncorroborated or nonspecific abuse claims at face value.  <u>See, e.g.</u>, <u>Pullins v. Commissioner</u>, 136 T.C. at 454; <u>Johnson v. Commissioner</u>, at \*13-\*14.  Claims of abuse require corroborating evidence or specificity in allegations.  <u>See, e.g.</u>, <u>Deihl v. Commissioner</u>, T.C. Memo. 2012-176, 2012 WL 2361518, at \*12-\*13, <u>aff'd</u>, 603 F. App'x 527 (9th Cir. 2015).  In her April 2015 request for relief on Form 8857 petitioner explicitly answered that she was not a victim of abuse.  She did not describe or document any alleged abuse in an attachment to her Form 8857, and she did not explain at trial why she had checked "No" or whether she had done so by mistake.  Instead petitioner made general assertions that Mr. Robinson mentally and verbally abused her.  She did not introduce any documentary evidence or tie her abuse claims to specific events.  Accordingly, we find petitioner has not proven abuse, and therefore this factor is neutral.  <u>See</u> Rev. Proc. 2013-34, sec. 4.03(2)(c)(iv).

[*37] V.     Conclusion

On the basis of the foregoing facts and circumstances, we hold that the equities weigh in petitioner's favor. The factors that weigh in favor of relief are marital status, knowledge, and lack of significant benefit. The factor that weighs against relief is compliance with Federal income tax laws. The remaining factors are neutral. Our decision whether relief is appropriate is not based on a simple tally of those factors. See, e.g., Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40; see also Johnson v. Commissioner, at *20. Instead the weight given to each factor is based on the requesting spouse's facts and circumstances. As a result, when we weigh petitioner's facts and circumstances, we hold she is entitled to relief from joint and several liability under section 6015(f) for tax year 2010.

In reaching our holding, we have considered all arguments made, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for

petitioner.